### TEALL *vs.* FELTON.

~~~ver may be maintained in the courts of this state against a postmaster for improp-
    y detaining a newspaper, although such detention is under color of the laws of
    the United States and the regulations of the post office department.

The question, when the jurisdiction of the federal courts is exclusive and when con-
    current with that of the state courts, considered.

A postmaster, who assumes to charge letter postage on a newspaper, in consequence
    of an initial being on the wrapper, does not act judicially in such a sense as to
    protect him from an action for improperly detaining such newspaper, although no
    fraud or malice be alleged or proved.

ON error from the supreme court. Mary C. Felton, by her
next friend Charles T. Hicks, sued William W. Teall in a
justice's court, and declared in trover for converting one news-
paper called the Michigan Expositor, of the value of six cents,
and one newspaper wrapper of the value of six cents. The de-
fendant pleaded the general issue, and the cause was tried by
a jury. On the trial it appeared that the defendant was post-
master at the city of Syracuse; that the newspaper mentioned

Teall v. Felton.

in the declaration came to that post office and was put into the box of Mr. Hicks, who demanded it of the postmaster in behalf of the plaintiff, and tendered the newspaper postage thereon, being one and a half cents. There was an initial upon the wrapper, and for that reason the defendant refused to deliver it until letter postage, fifteen cents, should be paid. The letter postage was marked at the Syracuse post office. One of the clerks in the post office testified that it was the general custom to charge letter postage on newspapers having on them a single initial. The defendant in the course of the trial objected to the jurisdiction of the court, which objection was overruled. After the plaintiff had rested, the defendant introduced in evidence a circular from the post office department as follows:

" *To Postmasters.* I am directed by the postmaster general to call your special attention to the multiplied and increasing attempts to violate the law and defraud the revenue by writing on the wrappers, margin or other portion of newspapers, pamphlets and magazines sent by mail. The cheap postage system has removed every reasonable excuse for violating or evading the law, and too much vigilance cannot be exercised by postmasters to detect and punish the offenders; and public sentiment, when well informed, will not fail to sustain you in the faithful discharge of this duty, which is as imperative upon you as any other. That frauds of this kind may be detected and traced to their origin, you are particularly instructed to stamp or mark in writing any transient (by which is meant all not regularly sent to subscribers) newspapers, pamphlets or magazines, with the name of the office and amount of postage. The wrappers of all such newspapers, pamphlets or magazines, when they have reached their destination, should be carefully removed, and if upon inspection, found to contain any manuscript or memorandum of any kind, either written or stamped, or by marks or signs made in any way, either upon any newspaper, printed circular, price current, pamphlet or magazine, or the wrapper in which it is enclosed, by which information shall be asked for or communicated, except the name and address of the person to whom it is directed, such newspaper, printed circular,

Teall *v.* Felton.

price current, pamphlet or magazine, with the wrapper in which it is enclosed, shall be charged with letter postage by weight. If the person to whom the newspaper, printed circular, price current, pamphlet or magazine is directed, refuses to pay such letter postage thereon, the postmaster will immediately transmit the same to the office from whence it was forwarded, and request the postmaster thereof to prosecute the same for the penalty of five dollars as prescribed by the 30th section of the act of 1825. Suits may be brought either in district courts or before state magistrates having civil jurisdiction in actions of debt for this amount under the respective state laws. The name of the sender written or stamped either upon the newspaper, printed circular, price current, pamphlet or magazine, or the wrapper in which it is enclosed, communicates such information as subjects it to letter postage, and the consequential penalties, if such postage is not paid at the place of its destination.

The diminution of the revenue of the department under the cheap postage system, and the great and increasing demand for additional mail facilities throughout the country, whose territory now extends to the Pacific, render it absolutely necessary not only that every cent of lawful revenue be collected and accounted for, but that the utmost vigilance should be exercised for the prevention of fraud, and the sure and speedy infliction of the proper penalty upon the offender.

This can only be accomplished by the strictest attention of postmasters, who are the sworn agents of the department, and bound to see the laws faithfully administered.

Post Office Department, Dec. 4, 1846.

W. J. BROWN, 2d Assistant Postmaster General."

The jury gave their verdict for the plaintiff for six cents damages, on which the justice rendered judgment. The common pleas of Onondaga county, on certiorari brought by the defendant, affirmed the judgment. The defendant then brought error into the supreme court, and that court sitting in the fifth district affirmed the decision of the common pleas. The opinion of the supreme court was delivered by GRIDLEY, J. as follows:

GRIDLEY, J. We have no doubt that this action was properly brought in a state court. If a letter enclosing $1000 in bank notes, had been sent by mail to the post office in Syracuse, directed to the plaintiff, and had been withheld by the postmaster, unlawfully, after a tender of the postage chargeable on the package, it is difficult to see why an action would not lie against the postmaster for a conversion of the money, in a state court. The injury is one for which the common law gives redress, and the party injured may seek his redress by the usual common law remedy, in any appropriate common law tribunal. The case is not one where the remedy is given by an act of congress, and is to be sought in the courts of the United States. So too, we are of the opinion that the conversion of a newspaper belonging to a citizen, authorizes an action of trover in the appropriate state tribunal, notwithstanding the party guilty of the conversion should be a postmaster. To justify such an action, however, the conversion should be clearly proved. The withholding of the paper should be shown to be without color of right, and the plaintiff should establish his title to it by unquestionable proof. This view of the case brings us to the consideration of the question whether there is any error apparent in the record for which we are authorized to reverse the judgment. This will depend upon the facts proved on the trial of the cause, or rather upon what we are bound to adjudge to be the facts of the case after the verdict of the jury.

By the act of 1845, (*Acts of 2d. Session of 28th Congress, p.* 24, § 1,) the defendant was bound to charge with letter postage, not only letters in manuscript, but also "*a paper of any kind by or upon which information shall be asked for or communicated in writing, or by marks and signs,*" &c. Now it is quite clear that an initial may be so placed upon a paper as to convey information, and precisely such information as was intended to be prohibited by the act. For instance, a friend whose initial is known to his correspondent who may be travelling to a certain place in Michigan, may thus communicate t a distant person, the fact of his arrival. So also a distant correspondent may, by a paper which in itself contains nothing of

mportance, on which is inscribed his initial, communicate the fact of his friendly remembrance and recognition, and of his own good health. There are cases, therefore, in which a postmaster may only be doing his duty under the act, in charging such a paper with letter postage. And chap. 58, § 426, of the regulations for the government of the post office department, shows that it is immaterial whether the writing, or sign, or mark is on the paper or the wrapper. We have no doubt that the above is a sound though a severe interpretation of the act, when we consider the object for which it was passed, and the change in the phraseology from that employed in the act of 1825. But it is equally clear that an alphabetical character which would be an initial of some word or name, may often be found inscribed on the wrapper of a newspaper made carelessly and with no definite intent, or which may have been upon the paper used as a wrapper before it was employed for that purpose. In such a case the initial would be no evidence at all, that it was a mark or sign by which information was asked or communicated. Now we have no evidence in this return of the justice that this single letter was a capital letter; whether it appeared to be written by the same hand, or with the same ink and pen with the address on the wrapper, nor as to what position it occupied on the wrapper. Nor have we any evidence, whatever, to show by circumstances or otherwise, whether it was probably written by the person who sent the paper, to communicate information, or not. For aught we know, it was written with a different ink and pen and hand, and was placed in such a position on the wrapper, as to indicate that it was there by accident and not by intent. It is true that the evidence does not show that it was so, nor does it show to the contrary; and that is precisely the case where the law declares that every intendment and presumption is to be made in favor of and to uphold the verdict of the jury. If the facts are such as to indicate an intentional making of the letter by the same hand which wrote the address, that should have appeared on the return of the justice. (*See* 18 *Wend.* 141; 3 *John.* 435, 439; 2 *id.* 378.) The jury saw the witness and may have had op-

portunities to arrive at the truth, which we have not.   Hence
the difficulty of setting aside a verdict when there is room for
controversy about the facts.

We must hold, therefore, inasmuch as it may have been
clearly an accidental mark, that the jury have found that it
was so.   This we feel bound to adjudge, while we can readily
imagine that by means of a careless mode of trying the cause,
or of an imperfect return, injustice may have been done to the
defendant below.

*S. D. Dillaye,* for the plaintiff in error.   I. The act, on ac-
count of which this suit was brought, was done by the plaintiff
in error as postmaster, and in the regular exercise of his duties
under the laws of the United States and the regulations of the
post office department.   For any, even an erroneous, exercise
of his duties as such postmaster he was not amenable to the
tribunals of the state of New-York.   The state courts had no
jurisdiction over the subject matter of the suit.   (*Const. of U. S.
art.* 1, § 8 ; *Post Office Laws of* 1825 *and* 1827 ; *Common-
wealth* v. *Feely,* 1 *Va. Cas.* 321 ; *Sergeant's Const. Law,* 279 ;
*United States* v. *Lathrop,* 17 *John.* 8, 9, 10 ; *Story on the
Const.* §§ 1124, 1632 ; *McCullough* v. *The State of Maryland,*
4 *Wheat.* 416 ; *United States* v. *Cornell,* 2 *Mason's Rep.* 60 ;
*Osborn* v. *Bank of U. S.* 9 *Wheat.* 738 ; *Slocum* v. *Mayberry,*
2 *id.* 1 ; *Federalist, No.* 80.)

II. In the absence of fraud or malice, which are not pretend-
ed or alleged in this case, officers required by the law to exer-
cise their judgment are not answerable for mistakes of law or
errors of judgment.   (*Drew* v. *Colton,* 1 *East,* 563 *and note ;
Seaman* v. *Patten,* 2 *Caines,* 312 ; *Jenkins* v. *Waldron,* 11
*John.* 114 ; *Vanderheyden* v. *Young, id.* 160 ; *Cunningham*
v. *Bucklin,* 8 *Cowen,* 185 ; *Weaver* v. *Deavendorf,* 3 *Denio,*
117.)   The act complained of was in its nature judicial, and
the cases cited show that the plaintiff in error was not liable
therefor.

III. The evidence on the trial clearly showed that there was
an initial on the wrapper of the newspaper when it came to the

Teall *v.* Felton.

Syracuse post office; and it should have been decided as mater of law that the plaintiff in error, in imposing letter postage, did no more than follow out the instructions from the post office department, and therefore that he was not liable.

*B. D. Noxon,* for the defendant in error, to sustain the jurisdiction of the state courts, cited *Bruen* v. *Ogden,* (6 *Halst.* 370, 377, 379, 381 ;) *Wilson* v. *McKenzie,* (7 *Hill,* 95 ;) *Story on Agency,* §§ 319, 319 *a,* 319 *b,* 320, 321, 322; *Cowp.* 754; 1 *Kent's Com.* 386. On the merits he insisted that the question was *one of fact purely,* as to which the verdict was conclusive. (18 *Wend.* 141 ; 1 *Hill,* 61 ; 3 *John.* 435, 439 ; 2 *id.* 378.)

WRIGHT, J. The first point taken by the plaintiff in error is, that if any action could be maintained against him, the defendant in error had not the choice of a forum, as the jurisdiction of the courts of the United States, in a case of this character, is exclusive. If this proposition be true, it is quite unnecessary for the plaintiff in error to come here to ask us to reverse the judgment, for it is utterly void.

This is undoubtedly a question of grave importance; for if the plaintiff in error be right, the state courts have been wrong ever since the adoption of the constitution of the United States; as the cases are almost without number, in which such courts, in the exercise of their ordinary, original and rightful jurisdiction, have incidentally taken cognizance of cases arising under the constitution, the laws, and treaties of the United States. (1 *Kent's Com.* 395.) In our own courts, officers of the government of the United States have been impleaded in actions of assumpsit, debt, trespass, &c. in which the defence set up was that they were acting officially under the laws of the Union. (*Ripley* v. *Gelston,* 9 *John. R.* 201 ; *In the matter of Stacy,* 10 *id.* 328 ; *Hoyt* v. *Gelston & Schenck,* 13 *id.* 141 ; *Wilson* v. *M'Kenzie,* 7 *Hill,* 95 ;) and in at least one case the supreme court of this state held that they had jurisdiction, and sustained a suit on a bond for duties given to a collector of the United States customs. (*United States* v. *Dodge,* 14 *John*

Teall *v.* Felton.

*R.* 95.) I am not disposed to assume for the courts of this state the exercise of powers, concurrently or otherwise, clearly taken from them by the constitution of the United States ; nor a jurisdiction in *all* cases that may grow out of, and be peculiar-to that instrument : but I think that to divest them of primitive jurisdiction, or pre-existing authority, the grant of power to the federal courts should be direct and exclusive, and the exercise of it by the state courts expressly prohibited. This was the construction given to the clauses of the constitution providing for the organization of the federal judiciary, cotemporaneous with its adoption, both by the national legislature and eminent expounders of it. (*Judiciary Act of* 1789 ; *Federalist, No.* 82.)

The first section of the third article of the constitution of the United States provides for the organization of a supreme court, and such inferior courts as congress may from time to time ordain and establish. This provision simply denotes the organs of the national judiciary. Were its construction extended further, " it would (as has been remarked by one of the eminent framers of the constitution,) amount to an alienation of state power by implication." (*Federalist, No.* 82.) The second section provides that " the judicial power shall extend to all cases in law and equity, arising under this constitution, the laws of the United States, and treaties made, or which shall be made under their authority ; to all cases affecting ambassadors, other public ministers, and consuls ; to all cases of admiralty and maritime jurisdiction ; to controversies to which the United States shall be a party ; to controversies between two or more states, between a state and citizens of another state, between citizens of different states, between citizens of the same state claiming lands under grants of different states, and between a state, or the citizens thereof, and foreign states, citizens or subjects." This is a mere grant of jurisdiction to the federal courts, and limits the extent of their powers, but without words of exclusion, or any attempt to oust the state courts of concurrent jurisdiction, in any of the specified cases in which jurisdiction existed prior to the adoption of the constitution. The apparent

Teall *v.* Felton.

object was not to curtail the powers of the state courts, but to define the limits of those granted to the federal judiciary.

This doctrine of exclusive and concurrent jurisdiction growing out of the provisions of the third article of the constitution of the United States, was fully examined in the court for the correction of errors, in the case of *Delafield* v. *State of Illinois*, (2 *Hill*, 159,) and that court, with great unanimity, arrived at the conclusion, that the constitution had not, by its own force, divested the state courts of any of their former jurisdiction; and that a mere grant of jurisdiction to a particular court, without words of exclusion as to other courts previously possessing the like powers, will only have the effect of constituting the former a court of concurrent jurisdiction with the latter. See, also, *Federalist*, *No.* 82, in which a similar doctrine is maintained.

I will not contend that congress may not make the jurisdiction of the federal courts exclusive in cases affecting ambassadors, other public ministers, and consuls; or in cases of admiralty and maritime jurisdiction; or in cases growing out of, and peculiar to the federal constitution, and where the remedy is exclusively given by an act of the national legislature. In the latter cases congress may unquestionably provide that the remedy specifically given shall be pursued and enforced in the federal courts solely. But in many cases where the law of the Union prescribes the remedy, the power to pursue and enforce it in the state courts, is expressly given by congress. In cases where this has not been done, and there is no exclusive grant of jurisdiction to the federal courts, if the state tribunals are so organized as to afford redress, it may be obtained therein. I think that it is strictly true that in all civil cases where the common law affords redress, the party injured may seek it in a state tribunal, proceeding according to the course of the common law, and having jurisdiction of the person of the defendant, though he may be an officer of the federal government, and affect to act under a law of the Union. "The judiciary power of every government," says one of the distinguished authors of the Federalist, "looks beyond its own local or municipal laws, and in civil cases lays hold of all subjects of litigation

between parties within its jurisdiction, though the causes of dispute are relative to the laws of the most distant part of the globe. Those of Japan not less than of New-York may furnish the objects of legal discussion to our courts." (*Federalist, No.* 82.) I am aware that there are cases of federal cognizance, in which the state courts have not a concurrent jurisdiction. A sovereign state cannot be sued in the court of another state, neither could she be in the federal courts, but by agreeing expressly in the national compact to submit herself to their jurisdiction. Crimes against the government of the United States cannot be punished in the state courts, for every criminal prosecution must charge the offence to have been committed against the sovereign whose courts sit in judgment upon the offender, and whose executive may pardon him. (1 *Kent's Com.* 402.) Nor will the courts of this state enforce the penal laws of the United States, ( *United States* v. *Lathrop,* 17 *John. R.* 9,) or of any other state. (*Scoville* v. *Canfield,* 17 *John. R.* 338.) But the want of jurisdiction in these cases depends upon principles older than the federal constitution, and wholly independent of it.

But the counsel for the plaintiff in error contends that this is a case which the state courts did not hold cognizance of at the adoption of the federal constitution, for the reason, that the post office department not only never in any manner or at any time, pertained to the state or colony, but is entirely the creation of the national statute : that it owes its existence exclusively to the constitution and national legislature, and hence, that the federal judiciary has exclusive jurisdiction in all matters growing out of, or pertaining to it. That the post office is a federal institution no one will deny ; but it is difficult to perceive how the premises of the counsel sustain the conclusion at which he arrives. The same reason would apply with equal force in case of a suit being brought against a collector of the customs. The present action is one coeval with the common law, to enforce a right to property, alleged to have been wrongfully converted by the defendant. This remedy for a tortious conversion has always been complete in the state courts. It does not fol

Teall v. Felton.

low that because the defendant may have been acting under a law of congress, in withholding the newspaper, and consequently may defend himself against the alleged conversion, that jurisdiction of the subject matter is exclusively given or acquired by the federal courts under such law. The plaintiff is not seeking redress under the post office laws, or attempting to enforce a penalty specifically imposed by them on the postmaster for a fraudulent act pertaining to his official duty. She simply seeks to recover in an appropriate common law tribunal, competent to afford a remedy, and in a form of action more ancient than the federal constitution or laws, the value of her property. If the defendant can maintain that by the post office laws, or any constitutional act of the national legislature, there was no legal conversion, his defence will be complete. But it is an incorrect conclusion, that because a law of congress prescribes the duties of an officer of the federal government, and in a proper case he may thereunder defend his acts, for such reason the state courts are ousted of jurisdiction. Upon the whole, I have no doubt that the justice had jurisdiction in the present case : and whilst asserting this jurisdiction, I would not be understood as inclined to throw the least obstacle in the way of a successful operation of the general government, or to encourage the exercise of state power having that tendency.

The remaining point of the plaintiff in error is, that the postmaster was required by law to judicially determine whether the initial on the wrapper of the newspaper, asked for or communicated information ; and that being compelled to act, he is not answerable for a mistake in law, or a mere error of judgment, unaccompanied by fraud or malice. The principle is well settled that a public officer, who is not a mere volunteer, but compelled to act in a judicial capacity, is not amenable either civilly or criminally, for a mistake in law, or error of judgment, when his motives are untainted with fraud or malice : and if it be true that the postmaster in this case was compelled to exercise his judgment in determining the object or purpose of the initial upon the wrapper, the judgment against him should be reversed. (*Drew* v. *Coulton*, 1 *East's R.* 563; *Seaman* v. *Pat*

*ten, 2 Caines' R.* 312; *Jenkins* v. *Waldron,* 11 *John. R.* 114;
*Weaver* v. *Devendorf,* 3 *Denio,* 117.) I have been unable,
however, to arrive at the conclusion on this point, so confidently
put forth by the counsel for the plaintiff in error. In the act
"to reduce the rates of postage," &c. (*Laws of the U. States
for* 1845, *chap.* 43, § 1,) this provision occurs : "In lieu of the
rates of postage now established by law there shall be charged
the following rates, viz : For every single letter in manuscript,
*or paper of any kind by or upon which information shall be
asked for or communicated in writing, or by marks and signs,*
conveyed in the mail, for any distance under three hundred
miles, five cents ; and for any distance over three hundred miles,
ten cents," &c. This is the only provision touching the ques-
tion, and this it is insisted compels the postmaster, in all cases,
in which a newspaper shall be conveyed through the mail, hav-
ing writing thereon, or marks and signs, to judicially determine
whether such writing, or marks, or signs, ask for or communi-
cate information. In other words, that it is submitted to him
as the sole judge in every case to decide the question of fact ;
and it follows of course that from his judgment there is no ap-
peal. I see nothing in the law of congress that submits this
question exclusively to his judgment; nor is the power within
the general scope of his duties as postmaster. I think that if
ne assumes to determine, he does it at his peril. It is true that
he is bound to charge the rates of postage prescribed on letters
or papers, conveyed by the mail, of the description embraced
in the act of congress. In a great variety of cases it would be
obvious that the writing, marks, or signs, were used to ask for
or convey information, and as a matter of fact a jury would not
hesitate to come to that conclusion. In such cases the post-
master would be but doing his duty to charge letter postage.
But there may be cases where the intent is not apparent, or the
writing, mark or sign, may be on the newspaper or its wrapper,
without a definite intent, or by accident. He is not made the
exclusive arbiter to decide that such newspapers should or should
not be rated with letter postage. When he does undertake to
decide, it should be in a case in which the fact, if disputed,

could be satisfactorily established. Whether a newspaper, by having writing or marks thereon, falls within the description authorizing it to be rated with letter postage, is a question of fact, and if disputed, must be determined in the same manner and by the same tribunals, that determine other questions of fact.

I confess that I see difficulty in many cases to successfully carry out the provisions of the act of congress. It might be impossible, many times, for jurors to satisfactorily determine whether an initial, or mark, found on a newspaper passing through the mail, was placed thereon with a definite intent. But this is no reason for the postmaster to assume judicial power. The national legislature can alone remedy the difficulty.

In this case the jury have found that the initial on the wrapper of the newspaper was there without any design of asking for or communicating information ; that it was a mark thoughtlessly or accidentally made, or that it was on the paper prior to its being used as a wrapper, and hence that the paper did not fall within the description authorizing the postmaster to demand letter postage. From the return of the justice, no facts appear to indicate an intentional marking, nor are there any facts showing the contrary ; and as the return does not purport to give the whole evidence, I think we must intend that the defendant failed to establish a defence, and that the facts proved justified the finding of the jury.

I am of the opinion that the judgments of the courts below should be affirmed.

Judgment affirmed.