ANTONIO LEONE, Appellant, *v.* BOOTH STEAMSHIP COM-
PANY, LTD., Respondent.

**Master and servant — negligence — injury to seaman on
steamship caused by fall — when company owning ship liable
to plaintiff for refusal of ship's master to have injury examined
and treated in hospital at first port entered by ship — unjusti-
fiable assumption by ship's master that plaintiff was feigning
injury.** ·

Plaintiff while engaged in his work as a seaman upon a steamship
owned by defendant fell from a mast, dislocated his shoulder and
fractured a part of the humerus of his arm. The ship's physician
discovered and reduced the dislocation but failed to find the fracture
although he suspected one. He told plaintiff that at the first port
of call he would take him to a hospital and examine him by means of
an X-ray. A few days later the ship reached a port where there was
a hospital, at which it must be assumed that there was an X-ray
instrument. Plaintiff requested to be sent ashore and the physician
also desired it, but the ship's master refused. The ship then sailed
to various South American ports but nothing further was done except
that the master personally made some tests of plaintiff's arm and
decided that there was no fracture and compelled plaintiff to work,
some of a kind unsuited to his condition, notwithstanding his protests.
Two months later the ship returned to New York and plaintiff was
taken to a hospital where the fracture of his arm was discovered, and
the injury largely relieved although the arm will never recover its
strength. *Held*, that the ship's master did more than rely upon the
advice of the physician; that for reasons of his own he personally
prevented plaintiff from receiving treatment in the hospital at the
first port of call; that because of his personal inspection he reached
the conclusion that plaintiff was feigning and compelled him to work;
that he failed to exercise the reasonable prudence required of him
and that there is evidence to sustain the decision of the jury that
the interference of the ship's master resulted in injury to plaintiff
for which defendant is liable.

*Leone* v. *Booth Steamship Co.*, 189 App. Div. 184, reversed.

(Argued October 25, 1921; decided November 22, 1921.)

APPEAL from a judgment, entered November 22, 1919,
upon an order of the Appellate Division of the Supreme

Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

*Warren Bigelow* and *Silas B. Axtell* for appellant. The master's negligence was clearly established and the appellate court, therefore, erred in disturbing the verdict. (*The Iroquois*, 194 U. S. 240; *The Troop*, 128 Fed. Rep. 865; *Scarff* v. *Metcalf*, 107 N. Y. 214; *The Governor*, 230 Fed. Rep. 857; *N. Alaska Salmon Co.* v. *Larson*, 220 Fed. Rep. 93; *The Baron Napier*, 249 Fed. Rep. 126.) There were questions of fact in the case which warranted the trial justice in submitting the case to the jury. The Appellate Division, therefore, erred in dismissing the complaint. (*Middleton* v. *Whitridge*, 213 N. Y. 507; *Fagan* v. *Atlantic Coast Line R. R. Co.*, 220 N. Y. 301; *Larkin* v. *N. Y. Tel. Co.*, 220 N. Y. 27; *Meisle* v. *N. Y. C. R. R. Co.*, 219 N. Y. 317.)

*James McKown, Jr.,* and *Henry M. Hewitt* for respondent. There was no testimony of incompetent or improper treatment. (*The Sarina*, 147 Fed. Rep. 106; *The Vander Duyn Case*, 261 Fed. Rep. 887; *O'Brien* v. *Cunard S. S. Co.*, 154 Mass. 272; *Laubheim* v. *De Koninglyke Nederlandsche, etc.*, 107 N. Y. 228; *Allan* v. *Steamship Co.*, 132 N. Y. 91.)

ANDREWS, J. The plaintiff was a seaman on the steamship *Boniface* owned by the defendant. While engaged in his duty he fell from a mast, dislocated his shoulder and fractured the greater tuberosity of the humerus. He complains that after the injury the master neglected, failed and refused to give him proper care. The trial judge submitted two questions to the jury: whether the master was negligent in failing to send the plaintiff to a hospital in one of the ports at which the ship subsequently touched, and whether the master failed

1921.]            Opinion, per ANDREWS, J.      [232 N. Y. 183]

to act with reasonable prudence in requiring him to perform work which he was not in fit physical condition to perform. A verdict for the plaintiff was reversed by the Appellate Division and the complaint was dismissed. We have, therefore, to examine the record and determine, giving to the plaintiff the benefit of all the evidence in his favor and all inferences that may properly be drawn therefrom, whether there is any evidence from which the jury might find that the master did not render or permit that adequate care and attention or those hospital services that the plaintiff was entitled to receive.

On board was a competent ship's physician. For his negligence the defendant was not responsible. Upon his advice, received in good faith, the master might rely. Upon it the master might act. So acting, no liability can be predicated upon error or mistake.

The accident happened on February 4th when the ship was three days from New York. It resulted in such pain that the plaintiff refused to submit that night to an examination. The next day the shoulder and arm were swollen, so accurate diagnosis was difficult. The physician discovered and reduced the dislocation, however, but did not find the fracture. He told him, however, that at the first port of call he would take him to a hospital and examine him by means of an X-ray. Six days later the ship reached Barbadoes where there was a hospital. Great pain had continued. The arm then hung with the palm out and the plaintiff could not use it. He requested to be sent ashore and the physician also desired it. The master refused. He did so because he feared the British authorities would discover that the ship was equipped with wireless — at that time forbidden. We may assume that in the hospital was an X-ray instrument. They are in general use. It is common knowledge that such photographs are constantly taken in every hospital. It is to prefer shadow to substance to make the result of this action depend on affirmative

proof of this matter. Had the apparatus been used it may be inferred that the fracture would have been discovered. When later it was used the fact at once appeared. Instead of being sent ashore the plaintiff was told that he had been examined by some physician while asleep and that nothing was the matter with him. Apparently this statement could not be true.

Thence the ship sailed to various South American ports. Some two weeks after the accident the plaintiff was removed from the ship's hospital, where he had been treated, and sent into the forecastle. Nothing was thereafter done for him except that he was given some pills. The ship's physician still discovered no fracture, although he suspected one. The master, however, made some tests of his own and decided that there was none. Consequently he seems to have concluded that the plaintiff was shamming. The latter continuously suffered great pain but the master used violent language to him and compelled him to do work, some of a kind unsuited to his condition, notwithstanding his protests.

The ship again reached New York on April 22d. The plaintiff was taken to the Long Island Hospital. There his true condition was discovered. He was treated and the trouble was largely relieved, although his arm will never recover its former strength.

Under these circumstances the jury might have found that the master did more than rely in good faith on the advice of a competent physician; that for reasons of his own he personally prevented the plaintiff from receiving treatment in a hospital at Barbadoes; that because of his personal inspection he reached the conclusion that the plaintiff was feigning and compelled him to do improper work; and that in both these respects he failed to exercise that reasonable prudence required of him.

If so, did such interference result in injury? It is said that the treatment in any event would have been the same. In view of other testimony the jury might have

doubted this conclusion. And the physician also admits that some of the work which the plaintiff says he did was unsuited to a man who had the injuries which the plaintiff claims existed. The prompt relief experienced when the plaintiff was sent to the hospital at Long Island permits the inference that a like result would have followed the treatment at Barbadoes.

The judgment of the Appellate Division should be reversed and that of the trial court affirmed, with costs in this court and in the Appellate Division.

HISCOCK, Ch. J., HOGAN, CARDOZO, POUND, McLAUGH-LIN and CRANE, JJ., concur.

Judgment accordingly.