AUGUST TAMMIS, Appellant, *v.* PANAMA RAILROAD COMPANY, Respondent.

Second Department, June 29, 1922.

Courts — jurisdiction — action for personal injuries received by mariner on shipboard — Merchant Marine Act of 1920, section 33, did not oust State courts of jurisdiction — express words of exclusion or plain repugnancy to exercise of State authority necessary to oust State courts — neither condition appears in case at bar.

Congress by section 33 of the Merchant Marine Act of June 5, 1920, did not intend to deprive seamen of the right to resort to the State courts in an action *in personam* to recover damages for personal injuries and, in respect to seamen, the privilege, saved to suitors by section 9 of the Judiciary Act of 1789 and continued by the United States Revised Statutes and the Judicial Code, still exists.

The language in said Merchant Marine Act, "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located," simply determines the venue of such actions when brought in the District Court of the United States.

There can be no presumption that State authority is excluded from the mere fact that Congress has legislated. There must be express words of exclusion, or a manifest repugnancy in the exercise of State authority over the subject in order

to oust the State courts of jurisdiction. Neither of these conditions appears in the case of a seaman seeking to recover damages from a shipowner, his employer, for injuries received in the course of his employment on the grounds of the negligence of the shipowner and the unseaworthiness of the vessel.

APPEAL by the plaintiff, August Tammis, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Richmond on the 28th day of February, 1922, dismissing the action upon the ground that the court had no jurisdiction thereof under section 20 of the Seamen's Act, 1915, also known as the La Follette Act (38 U. S. Stat. at Large, 1185, chap. 153), approved March 4, 1915, as amended by section 33 of the Merchant Marine Act, 1920, also known as the Jones Act (41 id. 1007, chap. 250), approved June 5, 1920.

The plaintiff, a resident of Richmond county, was a mariner, a ship's carpenter, on the defendant's steamship *Cristobal.* The defendant is a domestic corporation having its principal office in the borough of Manhattan, New York county. On October 10, 1921, while the steamship on a voyage from New York to the Canal Zone was lying alongside the pier at Cristobal, by direction of the mate plaintiff was " warming up " a windlass on the deck of the ship preparatory to its use in shifting the vessel to another pier. The windlass did not work properly and the mate told him to go below to ascertain what the trouble was with the engine which supplied the steam. While plaintiff was carrying out the order the engine blew up, scalding and otherwise injuring him. He alleges, and offered evidence, that one of the cylinders in the engine was defective and cracked, that the crack had been improperly welded, that the defect had existed for some time and that he had frequently called it to the attention of his superior officers who insisted that it was safe and ordered him to go on with his work. He brought this action to recover damages for his injuries, charging that they were due to the negligence of the defendant and claiming full indemnity because he alleged the defect in the engine rendered the vessel unseaworthy. After plaintiff had been examined and cross-examined concerning the accident, the counsel for defendant moved for a dismissal of the action upon the ground that under the Merchant Marine Act of 1920 (41 U. S. Stat. at Large, 1007, § 33, amdg. Seamen's Act, 1915 [38 id. 1185], § 20) jurisdiction of actions by seamen to recover damages for injuries received in the course of their employment was exclusively in the Federal courts. The learned trial justice granted the motion and the plaintiff appeals.

*Silas B. Axtell,* for the appellant.

*Richard Reid Rogers,* for the respondent.

KELLY, J.:

We have here an action by a mariner, one of the crew of a vessel of the United States engaged in commerce and navigation, to recover damages from the shipowner, his employer, for injuries received in the course of his employment, as he alleges, (1) because of the negligence of the shipowner, (2) because of the unseaworthiness of the vessel.

Every species of tort, however occurring, and whether on board a vessel or not, if upon the high seas or navigable waters, is of admiralty cognizance (*Atlantic Transport Co.* v. *Imbrovek*, 234 U. S. 52, 60), and article 3, section 2, subdivision 1, of the Constitution of the United States extends the judicial power of the United States to all cases of admiralty and maritime jurisdiction. Article 1, section 8, subdivision 18, gives Congress the power to make all laws necessary for the execution of the powers granted. By section 9 of the Judiciary Act of 1789 (1 U. S. Stat. at Large, 76, 77) the District Courts of the United States were given " exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, * * * saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it." This grant was continued by the United States Revised Statutes (§§ 563, 711) and by the Judicial Code (§§ 24, 256). (*Kennedy* v. *Cunard Steamship Co., Ltd.*, 197 App. Div. 459, 464, 466.)* On June 5, 1920, Congress enacted the Merchant Marine Act of 1920, entitled " An Act to provide for the promotion and maintenance of the American merchant marine, to repeal certain emergency legislation, and provide for the disposition, regulation, and use of property acquired thereunder, and for other purposes " (41 U. S. Stat. at Large, 988, chap. 250), and in section 33 (Id. p. 1007) amended section 20 of the Seamen's Act (38 id. 1185), passed March 4, 1915, entitled " An Act to promote the welfare of American seamen in the merchant marine of the United States; to abolish arrest and imprisonment as a penalty for desertion and to secure the abrogation of treaty provisions in relation thereto; and to promote safety at sea " (38 id. 1164, chap. 153), as follows:

" Sec. 33. That section 20 of such Act of March 4, 1915, be, and is, amended to read as follows:

" ' Sec. 20. That any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal

---

* Since amd. by 42 U. S. Stat. at Large, ——, chap. ——; Public, No. 239, 67th Congress, approved June 10, 1922.— [REP.

injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. *Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.' "* (Italics mine.)

It is contended by the defendant employer respondent that this last clause in section 33 of the Merchant Marine Act of 1920 takes such an action as this, brought by a seaman who suffered injury in the course of his employment, out of the saving clause in the Judiciary Act of 1789 as continued in the United States Revised Statutes and Judicial Code (*supra*), and thus vests exclusive jurisdiction in the District Court of the United States.

Whatever jurisdiction the State courts have over maritime cases depends upon the saving clause in the original Judiciary Act of 1789 continued as above indicated.

It has been held that seamen were " suitors " who might avail themselves of the common-law remedy saved by the Judiciary Act of 1789. (*Leon* v. *Galceran*, 78 U. S. [11 Wall.] 185; *Rounds* v. *Cloverport Foundry*, 237 id. 303, 307; *Leone* v. *Booth Steamship Co.*, 232 N. Y. 183; *Keep* v. *White*, 195 App. Div. 736; *Kennedy* v. *Cunard Steamship Co., Ltd.*, 197 id. 459.) . But the right of a seaman to recover damages from the shipowner was limited by the rules peculiar to the sea and to their employment (*The Osceola*, 189 U. S. 158) and the damages recoverable were limited in like manner. They were met with the fellow-servant rule, the law as to assumption of risk, and except in cases of unseaworthiness and other plain violations of a fundamental duty of the shipmaster towards his crew, they could not recover full indemnity, being limited to loss of wages, cure and maintenance. ( *Keep* v. *White, supra*.) Congress sought to relieve them from the fellow-servant rule (Seamen's Act of March 4, 1915 [38 U. S. Stat. at Large, 1185], § 20), but it was held that this did not remove the limitation on the damages to be recovered in the ordinary action for negligence. (*Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372.) That case was decided by the United States Supreme Court in 1918, and in 1920 when Congress took up the readjustment of conditions brought about by the World War and the promotion and maintenance of the American merchant marine, it considered the rights and remedies of the seamen employed upon American vessels. Seamen as distinguished from shore employees have been a subject of solicitude

by the government from the earliest days. "The mariners of a ship are commonly said to be wards of the admiralty. Their wages, their rights, their wrongs and injuries have always been a special subject of the admiralty jurisdiction." (Benedict Admiralty [4th ed.], § 182.) The various acts of Congress for their protection and relief from the foundation of the government were codified and compiled and revised in the Revised Statutes of the United States, title LIII, "Merchant Seamen," and section 33 of the Merchant Marine Act of 1920 (*supra*) is an amendment of other acts of Congress harking back to sections 4561 and 4581 of the United States Revised Statutes, part of chapter 5 of title 53, entitled "Protection and Relief." (See Barnes' Fed. Code, 1919, §§ 7581, 7603, notes.) The Seamen's Act of March 4, 1915, provided (§ 20) that in any suit to recover damages for any injuries sustained on board a vessel or in its service, seamen having command should not be held to be fellow-servants with those under their authority. As we have seen, the Merchant Marine Act of 1920 (§ 33) extends to them the many additional rights theretofore granted by Congress to interstate railway employees. (Employers' Liability Act of April 22, 1908, 35 U. S. Stat. at Large, 65, chap. 149, as amd. April 5, 1910, 36 id. 291, chap. 143.) It provides that a seaman who suffers injuries in the course of his employment may at his election maintain an action for damages at law with the right of trial by jury, and that in such action the extended common-law right or remedy shall apply, and in case of death the personal representative of the seaman may maintain an action for damages at law with similar right of trial by jury.

At the time this statute was enacted in 1920, a seaman had in addition to his action *in rem* in the admiralty court, "the right of a common law remedy, where the common law is competent to give it," saved to suitors in the original Judiciary Act of 1789, and this common-law remedy could be enforced in the Federal courts in an action *in personam* or in the courts of the State. It was, therefore, unnecessary for Congress in 1920 to confer jurisdiction of such actions on the Federal District Court. The plain intention of the act was to extend to the seamen the various rights and immunities enjoyed by other employees engaged in interstate commerce. When in the last clause of section 33 of the Merchant Marine Act of 1920, Congress said: "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located," it seems to me that this was a regulation providing for the venue of such actions when brought in the District Court of the United States. And as this case is to be sent back for a new trial

it may be that this action at common law should be tried in the First Judicial District of the State, which is the district in which the principal office of the defendant is located.

It is contended by the defendant respondent that the clause quoted has a much broader and more drastic effect; that in benefiting the seaman, Congress in the same breath took from him the right enjoyed in common with all suitors since 1789, to enforce his common-law remedy thus extended in the State courts, when such courts were competent to give it. The power and duty of the State courts to exercise jurisdiction with the Federal court in cases arising under the Constitution, laws and treaties of the United States has been declared repeatedly. " The fact that a State court derives its existence and functions from the State laws is no reason why it should not afford relief; because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the State as it is to recognize the State laws. The two together form one system of jurisprudence, which constitutes the law of the land for the State; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent." (*Claflin* v. *Houseman*, 93 U. S. 130.) And in *Teall* v. *Felton* (1 N. Y. 537), where Teall, the postmaster at Syracuse, N. Y., disputed the jurisdiction of the State court in an action for conversion, claiming that the Federal courts had exclusive jurisdiction, the Court of Appeals said: " If the plaintiff in error be right, the State courts have been wrong ever since the adoption of the Constitution of the United States; as the cases are almost without number, in which such courts, in the exercise of their ordinary, original and rightful jurisdiction, have incidentally taken cognizance of cases arising under the Constitution, the laws, and treaties of the United States. (1 Kent's Com. 395.) * * * I am not disposed to assume for the courts of this State the exercise of powers, concurrently or otherwise, clearly taken from them by the Constitution of the United States; nor a jurisdiction in *all* cases that may grow out of, and be peculiar to that instrument; but I think that to divest them of primitive jurisdiction, or pre-existing authority, the grant of power to the Federal courts should be direct and exclusive, and the exercise of it by the State courts expressly prohibited. This was the construction given to the clauses of the Constitution providing for the organization of the Federal judiciary, contemporaneous with its adoption, both by the National Legislature and eminent expounders of it. (Judiciary Act of 1789; Federalist, No. 82.)"

There is nothing in the Merchant Marine Act of 1920 which declares that jurisdiction of the seaman's action for damages shall be exclusively in the Federal courts. When Congress intended to vest exclusive jurisdiction of maritime actions in the Federal courts it was so declared in unmistakable language. In this identical Merchant Marine Act of 1920 (41 U. S. Stat. at Large, 1003, § 30, subsec. K), known as the " Ship Mortgage Act, 1920," providing for the foreclosure of a preferred mortgage upon vessel property, Congress said: " Original jurisdiction of all such suits is granted to the District Courts of the United States exclusively." In *People* v. *Welch* (141 N. Y. 266) the defendant was convicted of manslaughter in the second degree in the Court of General Sessions of the Peace in New York county. He was a licensed pilot in charge of a steam tug in collision with a yacht in the Hudson river, resulting in loss of life. Section 5344 of the United States Revised Statutes then provided that a pilot or other person employed upon a steamboat or vessel, by whose misconduct, negligence or inattention to duty the life of any person should be destroyed, should be deemed guilty of manslaughter, " and, upon conviction thereof before any Circuit Court of the United States, shall be sentenced," etc.*   The question presented upon the appeal was as to the jurisdiction of the State court, the defendant claiming that the Federal courts had exclusive jurisdiction. Chief Judge Andrews writing for the court said (at p. 273): " But it is obvious that to exclude the jurisdiction of the State courts over matters within their ordinary jurisdiction, the intention of Congress to exercise this power should be distinctly manifested and that the legislation relied upon to deprive the State courts of jurisdiction should be clear and unambiguous. There can be no presumption that State authority is excluded from the mere fact that Congress has legislated. There must be express words of exclusion, or a manifest repugnancy in the exercise of State authority over the subject. (See Curtis on Const. § 121.)"

So in the case at bar we have no express words excluding the seaman suitor from the benefit of the saving clause in the Judiciary Act of 1789, and no declaration that jurisdiction of the class of actions shall be exclusively in the District Court of the United States. And there is nothing repugnant in the exercise of State authority over the subject because the seaman is granted the rights and remedies accorded by Congress to interstate railway employees, and the rights and remedies of interstate railway employees are

---

* Since amd. by 33 U. S. Stat. at Large, 1025, § 5. Repealed by U. S. Crim. Code (35 U. S. Stat. at Large, 1153, 1159), § 341, in effect January 1, 1910. (35 id. 1159, § 345.) See, also, U. S. Crim. Code (35 id. 1144), § 282.— [Rep.

constantly before the State courts for adjudication.  In *Second Employers' Liability Cases* (223 U. S. 1, 56) the court, in construing the Federal Employers' Liability Act, said: " We are quite unable to assent to the view that the enforcement of the rights which the congressional act creates was originally intended to be restricted to the Federal courts.  The act contains nothing which is suggestive of such a restriction, and in this situation the intention of Congress was reflected by the provision in the general jurisdictional act, ' That the Circuit Courts of the United States shall have original cognizance, *concurrent with the courts of the several States,* of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, *and arising under the Constitution or laws of the United States.'*  August 13, 1888, 25 Stat. 433, c. 866, § 1.\*  *Robb* v. *Connolly,* 111 U. S. 624, 637; *United States* v. *Barnes,* 222 U. S. 513.  This is emphasized by the amendment engrafted upon the original act in 1910, to the effect that ' The jurisdiction of the courts of the United States under this Act shall be *concurrent with that of the courts of the several States,* and no case arising under this Act and brought in any State court of competent jurisdiction shall be removed to any court of the United States.'  The amendment, as appears by its language, instead of granting jurisdiction to the State courts, presupposes that they already possessed it."

In *Plaquemines Fruit Co.* v. *Henderson* (170 U. S. 511) the Supreme Court of the United States through Mr. Justice HARLAN in a very learned and interesting opinion discussed the concurrent jurisdiction of State courts with the Federal tribunals and said (at p. 517): " If it was intended to withdraw from the States authority to determine, by its [*sic*] courts, all cases and controversies to which the judicial power of the United States was extended, and of which jurisdiction was not given to the national courts exclusively, such a purpose would have been manifested by clear language.  Nothing more was done by the Constitution than to extend the judicial power of the United States to specified cases and controversies; leaving to Congress to determine whether the courts to be established by it from time to time should be given exclusive cognizance of such cases or controversies, or should only exercise jurisdiction concurrent with the courts of the several States."

I reach the conclusion, therefore, that Congress by section 33

---

\* Circuit Courts have been since abolished and powers transferred to District Courts.  (See U. S. Judicial Code [36 U. S. Stat. at Large, 1167], §§ 289, 291. See, also, U. S. Judicial Code [36 id. 1091], § 24, subd. 1.) — [REP.

of the Merchant Marine Act of June 5, 1920, did not intend to deprive seamen of the right to resort to the State courts in an action *in personam* to recover damages for personal injuries and that with respect to seamen this privilege saved to suitors by section 9 of the Judiciary Act of 1789 still exists.

I regret that I am unable to agree with the conclusions of the learned trial justice or with the decision of the learned justices in *Nox* v. *United States Shipping Board Emergency Fleet Corp.* (193 N. Y. Supp. 340) and *Prieto* v. *United States S. B. E. F. Corp.* (117 Misc. Rep. 703), but I think we should not deny the jurisdiction of the State courts upon the argument of an alleged repeal by implication of the express grant of jurisdiction in the Judiciary Act of 1789. I think we should adhere to the principle declared by Chief Judge ANDREWS in *People* v. *Welch* (*supra*), that " There must be express words of exclusion, or a manifest repugnancy in the exercise of State authority over the subject." I find no words of exclusion. There is no repugnancy because the identical Federal Employers' Liability Act referred to in section 33 of the Merchant Marine Act of 1920 is enforced in the State courts by express provision of the Employers' Liability Act. I think we should not divest ourselves of jurisdiction exercised since the government was founded by reason of the language of the last clause in section 33 of the Merchant Marine Act of 1920.

The judgment should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

BLACKMAR, P. J., RICH, JAYCOX and YOUNG, JJ., concur.

Judgment reversed on the law, and a new trial granted, with costs to appellant to abide the event.