Thomas Dickens, J.
The inspiration that has seemingly induced the inauguration of this formal coram nobis application in an attack on the judgment of conviction herein as being founded in part on alleged illegal admissions, stems from the ruling made by the Court of Appeals in People v. Huntley (15 N Y 2d 72) as the result of the holding in Jackson v. Denno (378 U. S. 368) with regard to the validity of the confessions by a defendant as a confitens reus.
This appellate ruling now forms the root of the probe into the facts of this case as pertains to the statement of admissions made by defendant. The vital question for answer, based on the oral argument of respective counsel and on their briefs, the calling of witnesses to testify having been waived, is, therefore, this: Did the District Attorney, by the use of foul tactics, whether directly or indirectly, obtain the pretrial admissions which he had the court reporter read into the evidence at the trial?
Restricted to a diagnosis of the facts and the circumstances relative to the question of the admissions involved here (People v. Loprete, 22 A D 2d 926), I find that the highlights, in which the admissions under scrutiny have their setting, are in short these: Defendant was arrested by F. B. I. agents on a Federal matter and on the same day taken to the United States Court House at Foley Square in Manhattan and allegedly held incommunicado about a week and then released after supplying the F. B. I. agents with an oral statement. Shortly thereafter he was arrested by the New York Police and was charged with the crime of kidnapping. The statement of admissions in question that he made to the District Attorney prior to the trial, is sub *573 stantially of the same tenor as that which he had made to the F. B. I. agents.
An extract from the trial minutes, the extract dealing with answers to the District Attorney’s questions which are introductory to the defendant’s pretrial statement of admissions of facts, will not be amiss, if set forth right here:
‘ ‘ Q. My name is Rosenblum. I am an Assistant District Attorney in the office of this County, New York District Attorney’s office. The man on my right is Mr. Boynton; he is also an Assistant District Attorney. There is Detective Swander and Detective Shields, who are both detectives of the Police Department. My purpose now is to ask you questions concerning the — any participation that you had, any connection you had with any crime which was committed in the County of New York. Do I understand clearly that you are willing to malee a voluntary statement and tell me any such things as you know, tell me things truthfully? A. Right.
“ Q. You understand that anything you say might he used against you in any future proceeding? A. Yes, sir.
‘ ‘ Q. Are you willing to make to me a truthful, complete and honest statement of your participation in any act which might amount to violation of the State of New York? A. Yes.
“ Q. And over which our office has jurisdiction? A. Right.
“ Q. And this statement, I assume, is voluntary? A. That is right.” (Emphasis supplied.)
The cornerstone of the present motion apparently rests exclusively upon the effect on the statement of admissions made to the District Attorney of defendant’s alleged charge that the Federal agents had used anticonstitutional means in obtaining admissions from him when they had him in their custody. In meaning, and in reality then, defendant holds forth that the oppressive measures employed by the Federal agents had the force of contaminating the admissions made to the District Attorney, although clearly, unequivocally and unqualifiedly, the record proves that he gave his statement of admissions to the District Attorney voluntarily and willingly in this prosecution under State jurisdiction, and that this statement was separate and distinct from that which he gave to the Federal authorities.
In an attempt, nevertheless, to join or link the State statement with the Federal statement in the hope of dovetailing them as of relevant bearing on each other, he gives as the reason for his voluntariness in making the statement to the District Attorney that a lingering fear (however, trial minutes, p. 904, confute it) from the alleged Federal ordeal overcame resistance when he was questioned by the District Attorney. Consequently, *574 as the result of having been under the gad or actual compulsion when in custody of the Federal agents, he proceeds to reason, in effect, by what I consider to be an artificial argument, that the Federal and State questioning incidents should be considered as soldered into one continuous legal affair despite the different jurisdictions, instead of having them regarded as insulated one from the other. In aid of such a trend of reasoning, he presents additional arguments in an atmosphere permeated with the Federal incidents and with a number of Federal citations, as if the disposition of this motion rests primarily on the Federal phase of this controversy.
I cannot adjust the reasoning of my mind to side with this apparently strained contention, because of the extraterritorial limits of the Federal courts, making prohibitive, in my opinion, extrajudicial decisions in an instance like that under review. In other words, the extrajudicial admissions within the soc of the Federal prosecution must be held to be confined there for use and are not to be used to affect the admissions made separately to State authorities, if we are to heed the general principles of law that follow immediately as applicable here concerning the powers of the courts in both jurisdictions. Procedure outside the realm of constitutionality is, at this time, the real matter to be concerned with, as I judge the situation in its proper perspective.
On the inherent question of constitutionality of admissions or confessions, the doctrine of stare decisis, in an instance like the present, is a must. But, the procedural form in making use of the statement of admissions as a piece of evidence, especially as one untainted, I maintain to be still existent as a State matter, in the light of what the Court of Appeals had said in Moore v. Moore (47 N. Y. 467, 468) (cited in People v. Grant, 14 Misc 2d 182): “ the federal government could not prescribe a rule of evidence for the State courts.”
As I have indicated from my view of things, the jurisdiction of the Federal courts, in the present instance, stops at the borders of the New York State courts. Beyond the Federal borders the admissions made to the Federal agents, it seems to me, are extralegal. Fundamentally, the Federal Government, generally speaking, has cognizable power only over persons who are within its respective territory, and thus such persons become subject to the control of its courts (People v. Murphy, 1 N Y 2d 367). Furthermore, inasmuch as the courts of no country execute the penal laws of another and the United States is regarded as another country in relation to this State, the United States falls, therefore, within the meaning of that rule. (Porter *575 v. Russell, 271 App. Div. 542 [citing United States Supreme Court cases]; Teall v. Felton, 1 N. Y. 537, 546.) The result then is that under the ruling of the United States Court, supplemented by the ruling of the Court of Appeals, the authorities of State jurisdiction deal with their own questions relating to the validity of confessions and the evidentiary procedure that applies to them. They are not bound to marshal into their deliberations confessions, even of similar import, from other jurisdictions, for one purpose or another.
For a comparative illustration by way of analogy of the point I am endeavoring to make as a revealing reflection upon the actual issue in hand —at this stage I interpolate notice of the absence of any accusation against the District Attorney of any participation in the Federal agents’ actions and of the absence of any adminicular proof for bolstering defendant’s present contention — I cite the ease of People v. Pettigrew (34 Misc 2d 114, affd. 20 A D 2d 970) in which I had the occasion to write the opinion.
In the cited Pettigrew case, defendant charged the District Attorney with failing to apprise the jury that the prosecution witness had allegedly received preferential treatment in a Federal prosecution in return for co-operation and testimony. In both the State and the Federal prosecution, the subject matter of the crimes was narcotics. I held as follows (p. 115): II Assuming, arguendo, that the Federal Attorney General had dealt with the witness in the manner asserted by defendant, how can one, in legal principle, fairly say that the District Attorney should be held responsible for the alleged ‘ deals ’ made with the Federal authorities? If anything, it seems to me that the conviction in the Federal court, had in effect, resolved itself into nothing more than the usual prior conviction, and, had, as such, become merely a component of the witness’ record.”
I maintain that theoretically the underlying principle of the Pettigrew case (supra) fits into the picture here. The admissions under the Federal jurisdiction belong in the Federal prosecution as part of defendant’s record there, whereas the admissions made under the State jurisdiction belong here regardless of similarity, and are separate and distinct; therefore, whatever the tactics used in the Federal branch may have been, those tactics can have no influential bearing on the admissions here which were given by defendant, freely and willingly, as a confitens reus. A reading of Jackson v. Denno (supra) convinces me that the answer to the subject as a constitutional question indicates the obvious common intendment of its reasoning to confine itself wholly to the constitutionality regarding *576 the manner by which a particular confession is obtained without concern over its procedural form as evidence, less so concern over commingling confessions as a matter of evidence, when from different jurisdictions, so as to make available one of impeachable quality to be employed to impair another of unimpeachable quality, or vice versa, especially when the authority of one jurisdiction, as here the District Attorney, is not shown to have played any part in the conduct of an authority in another jurisdiction, as here the Federal agents.
Skeletonizing the foregoing review, I state my consulatory response in the form of these findings of fact and conclusions of law.
FINDINGS OF FACT
1. The extrajudicial statement of admissions or confessions was voluntarily and willingly made by defendant to the District Attorney of New York County.
2. Neither force nor coercion nor threats nor unfair tactics were used by the District Attorney, whether directly or indirectly, or by any peace oEcer of this State, to obtain these admissions.
3. Defendant unequivocally acknowledged to the District Attorney at the pretrial questioning that he was giving the information sought by the District Attorney, on his volition and in truth.
CONCLUSIONS OF LAW
4. The People by the District Attorney of New York County did not in any wise violate the statutory law of this State dealing with the subject of confessions.
5. Whatever occurred within the jurisdiction of the Federal courts with regard to the alleged confessions there, is separate and distinct from what occurred in this State, and has no bearing on the question here, and was solely the doings, if any, of the Federal agents.
I conclude with a general reference to the maxim in Ballentine’s Dictionary (p. 570) that as a confitens reus, defendant still remains, in my judgment, as the best voluntary witness in the case. Translated in English, the maxim itself fully reads: “We have as the best witness, a defendant who is confessing.”
In a word then, I deny defendant’s quest for the granting of a trial de novo.