CATHERINE LYNOTT, as Administratrix, etc., of PETER LYNOTT, Deceased, Respondent, *v.* GREAT LAKES TRANSIT CORPORATION, Appellant.

Fourth Department, June 30, 1922.

Ships and shipping — action to recover for death of seaman injured on Great Lakes — action based on maritime tort — right and remedy given by Merchant Marine Act of 1920, § 33, exclusive — State courts have jurisdiction — assumption of risk rule not applicable to action for maritime tort — cause of action is under maritime law — damages excessive — interest from date of death not allowable.

The right and remedy given by section 33 of the Merchant Marine Act of 1920 to the personal representative of a seaman for wrongful death caused by injury

received on the Great Lakes aboard a vessel moored to a dock in the Buffalo harbor, are exclusive.

Under that section of said act and the saving clause of section 9 of the Judiciary Act of 1789 (now U. S. Judicial Code, §§ 24, 256), the State courts have jurisdiction of the action and may enforce the remedy there given.

The action herein for the death of a seaman who fell from a gangplank and was drowned is under the maritime law and not under the common law, and the rule in respect to the assumption of obvious risks is not a part of the general maritime law and not applicable to the present case.

Section 33 of the Merchant Marine Act of 1920 has added to the rights of seamen the causes of action corresponding to those expressly granted to railroad employees under the Federal Employers' Liability Act, but the causes of action in favor of seamen are still causes of action under the maritime as distinguished from the common law and must be governed by its established rules.

The verdict of the jury for $7,308 was, under the circumstances of the case, excessive, and should be reduced to $5,000.

As this action rests entirely upon the Federal statute, the judgment should not bear interest from the date of death to the date of rendition of the verdict.

Appeal by the defendant, Great Lakes Transit Corporation, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 14th day of March, 1922, upon the verdict of a jury for $7,308; also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes, and also from an order made at the Erie Special Term and entered in said clerk's office on the 23d day of March, 1922, denying defendant's motion to correct the judgment *nunc pro tunc* by striking out the amount of the interest from the date of decedent's death to the date of the verdict.

*Fred W. Ely*, for the appellant.

*Hamilton Ward* [*Dana L. Spring* of counsel], for the respondent.

Sears, J.:

The plaintiff's intestate at the time of his death was in the employ of the defendant as a coal passer on the steamer *Octorara*, a vessel of the defendant plying the waters of the Great Lakes. The accident took place while the vessel was moored to a dock in the Buffalo harbor. The deceased had been employed on this vessel as a coal passer for about a month previous to the accident. His duties were to wheel coal and shovel ashes in the hold of the vessel, and in legal terminology he ranked as a seaman. He first entered the employ of the defendant on this vessel at Detroit, on July 21, 1921, and upon the vessel reaching Buffalo the next day immediately re-signed for a trip from Buffalo to Duluth and back. This operation was twice afterwards repeated, and when the vessel arrived in Buffalo on August 18, 1921, at the end of the last of these trips,

he was, as usual, paid off and re-signed for another trip, and his death occurred less than twelve hours later, before the vessel had left the dock.

During all the time that the deceased was employed on the *Octorara* there had been furnished for the use of the crew in getting off from and onto the vessel, a narrow plank made of pine or oak, twenty feet in length, fifteen or eighteen inches in breadth with side pieces rising an inch or two above the surface of the board and nailed on each side. When the vessel was tied up to the dock this gangplank was put out through the fantail gangway near the stern of the ship and rested one end on the dock and the other end in a hallway just inside the gangway. As the vessel lay at the Buffalo dock at the time of the accident, the end which was on the dock projected about two feet beyond the edge of the dock, and the space, from the edge of the dock to the side of the vessel where the gangway was, was from four to six feet. The slope of this plank from the dock downward toward the vessel was estimated by different witnesses as from thirty to forty-five degrees. As it passed into the gangway there was a clearance of from three and a half to four feet from the top of the board to the top of the opening, and in passing in and out a person using the gangplank would have to bend over in passing through the gangway. There were no cross-cleats upon this gangplank, no matting upon it, and no handrail or sides except the pieces along the sides already mentioned. This plank was of a kind which was sometimes used for moving flour from one part to another of a vessel, and is sometimes called a flour-skid, but it appears not to have been used for that purpose on this vessel. When the vessel was not at the dock the gangplank lay in the hallway just within the gangway, and upon this hallway opened the door of the quarters furnished to the deceased for sleeping. The deceased, having left the vessel over this gangplank earlier in the day, returned about ten o'clock in the evening. There was sufficient light to allow everyone to see the surroundings. The deceased started down the gangplank and after taking two or possibly three steps on the plank, slipped, his feet going forward, and fell over sideways and down into the water. So his accident is described by the only eye-witness who was sworn. Death resulted from drowning.

The complaint is in the usual form under our State practice where damages are sought for death negligently caused. The answer, besides traversing the negligence, sets up contributory negligence and assumption of risk as separate defenses. The defendant now contends:

*First.* That this action was not within the jurisdiction of the

court because of the provisions of section 33 of the United States Merchant Marine Act of 1920 (41 U. S. Stat. at Large, 1007), passed and effective June 5, 1920 (Jones Act), amending section 20 of the Seamen's Act of March 4, 1915 (38 id. 1185), known as the La Follette Act, and

*Second.* That in any event the deceased assumed the risks which resulted in his death, and, therefore, the plaintiff cannot recover.

The cause of action, if any exists, is concededly based on a maritime tort.

The power of Congress to legislate on maritime matters exists by virtue of article 3, section 2, of the Constitution of the United States, taken in connection with article 1, section 8, subdivision 18. In *Southern Pacific Co.* v. *Jensen* (244 U. S. 205) the Supreme Court of the United States, referring to these clauses of the Federal Constitution, said: " * * * It must now be accepted as settled doctrine that in consequence of these provisions Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country."

And again in *Knickerbocker Ice Co.* v. *Stewart* (253 U. S. 149) the Federal Supreme Court said: " In *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, we declared that under § 2, Article III of the Constitution (' the judicial power shall extend to * * * all cases of admiralty and maritime jurisdiction '), and § 8, Article I (Congress may make necessary and proper laws for carrying out granted powers), ' in the absence of some controlling statute the general maritime law as accepted by the federal courts constitutes part of our national law applicable to the matters within admiralty and maritime jurisdiction; ' also that ' Congress has paramount power to fix and determine the maritime law which shall prevail throughout the country.' "

Previous to the enactment of section 33 of the Merchant Marine Act of 1920, a seaman injured upon his vessel (*first*) could maintain an action for his maintenance, cure and wages in the absence of fault on the part of the owner, the master, or any member of the crew, or (*second*) if his injury was due to the unseaworthiness of the vessel or its appliances, he could maintain an action for indemnity. (*The Osceola,* 189 U. S. 158.)

This latter remedy could be obtained either by a proceeding *in rem* in admiralty or by an action *in personam* in the State courts (or in case of diversity of citizenship in the Federal courts).

The right to maintain the common-law action is reserved by the Judiciary Act of the United States, adopted in 1789, section 9 providing: " That the District Courts shall have, exclusively of the courts of the several States, * * * exclusive original cog-

nizance of all civil causes of admiralty and maritime jurisdiction,
\* \* \* saving to suitors, in all cases, the right of a common
law remedy, where the common law is competent to give it." (1
U. S. Stat. at Large, 76, 77, § 9.)

This provision was continued by the United States Revised
Statutes (§ 563, subd. 8, and § 711, subd. 3) and is now embodied
in the United States Judicial Code.   (36 U. S. Stat. at Large, 1091,
§ 24, subd. 3, and Id. 1160, 1161, § 256, subd. 3.   See 40 U. S.
Stat. at Large, 395, chap. 97, §§ 1, 2; *Knickerbocker Ice Co.* v.
*Stewart, supra;* 42 U. S. Stat. at Large, ——, chap. ——; Public,
No. 239, 67th Congress, approved June 10, 1922.)

In this country, in the absence of statutory provision, no cause
of action for damages resulting from death whether due to a mari-
time tort or otherwise wrongfully caused was recognized either in
admiralty or at common law.   (*The Albert Dumois,* 177 U. S. 240;
*The Harrisburg,* 119 id. 199.)

Recently Federal statutes to remedy this defect in the maritime
law have been enacted.   (High Seas Death Act of March 30, 1920,
being 41 U. S. Stat. at Large, 537, chap. 111; Merchant Marine
Act of June 5, 1920, *supra,* § 33, being the Jones Act.)

The only provision of these statutes giving the personal repre-
sentative of a deceased seaman on a vessel on the Great Lakes a
cause of action against the owner of such vessel is section 33 of the
Merchant Marine Act of 1920, passed and effective June 5, 1920,
which is as follows:

" Sec. 33. That section 20 of such Act of March 4, 1915, be,
and is, amended to read as follows:

" 'Sec. 20. That any seaman who shall suffer personal injury
in the course of his employment may, at his election, maintain an
action for damages at law, with the right of trial by jury, and in
such action all statutes of the United States modifying or extending
the common-law right or remedy in cases of personal injury to
railway employees shall apply; and in case of the death of any
seaman as a result of any such personal injury the personal repre-
sentative of such seaman may maintain an action for damages at
law with the right of trial by jury, and in such action all statutes
of the United States conferring or regulating the right of action for
death in the case of railway employees shall be applicable.   Juris-
diction in such actions shall be under the court of the district in
which the defendant employer resides or in which his principal
office is located.' "

Previous to the enactment of these statutes the Supreme Court
of the United States had approved the application of State statutes
(*The Hamilton,* 207 U. S. 398) providing for damages resulting from

death due to maritime torts and of foreign laws to the same effect where death had occurred on a foreign vessel (*LaBourgogne*, 210 U. S. 95) in order to give the representative of the deceased a needed redress. The provisions of these State statutes are held to be common-law remedies within the saving clause of the quoted section of the Judiciary Act of 1789. (*Steamboat Co.* v. *Chase*, 16 Wall. 524.)

Running through all the decisions is the principle that the legislative power of the Federal government relating to maritime matters, whenever exercised is exclusive. Thus in *Southern Pacific Co.* v. *Jensen* (*supra*) the New York State Workmen's Compensation Law, so far as applicable to the case of a seaman, was held unconstitutional as infringing upon the Federal authority, the court saying: "And the same character of reasoning which supports this rule, we think, makes imperative the stated limitation upon the power of the States to interpose where maritime matters are involved." And in *Knickerbocker Ice Co.* v. *Stewart* (*supra*), referring to the *Jensen* case, the court said: "And we held that when applied to maritime injuries the New York State Workmen's Compensation Law conflicts with the rules adopted by the Constitution and to that extent is invalid. ' The necessary consequence would be destruction of the very uniformity in respect to maritime matters which the Constitution was designed to establish: and freedom of navigation between the States and with foreign countries would be seriously hampered and impeded.' "

In *Chelentis* v. *Luckenbach S. S. Co.* (247 U. S. 372) the Supreme Court of the United States held that a statute of the United States (Seamen's Act of 1915, *supra*, § 20, known as the La Follette Act, approved March 4, 1915) which provided that " seamen having command shall not be held to be fellow-servants with those under their authority " was ineffective to create a cause of action against the owner of the vessel because the action for maintenance, cure and wages was the only action against the owner which could be maintained in case of injury caused by another seaman, in the absence of an expressed legislative intention to impose upon shipowners a liability similar to that imposed upon employers upon shore.

A learned text-writer has expressed the opinion that the necessary effect of the *Chelentis* case is to deny the application of State statutes allowing damages in case of death to actions which might be brought by a deceased seaman's personal representative against the seaman's employers. (" Death Actions in Admiralty " by Robert M. Hughes, 31 Yale Law Journal, 123.) Perhaps in this dictum the learned writer did not have in mind actions based upon a ves-

sel's unseaworthiness.   In any event his view need not be considered here, for in this case there is a Federal statute definitely expressing the legislative intention, and by its language, applicable to this case.

The questions involved in this appeal relate to the exclusive character of the right and remedy there .given.   The conclusion must be drawn from the Federal cases cited that in maritime matters where Federal legislation occupies the field, it occupies it to the exclusion of State legislation, and that the New York Death Act providing damages in case of death wrongfully caused (Code Civ. Proc. § 1902 *et seq.;* now Decedent Estate Law, § 130 *et seq.,* as added by Laws of 1920, chap. 919) has no application here.   This the learned trial justice practically held, because in his charge he instructed the jury that contributory negligence was not a complete but only a partial defense working merely a mitigation of damages which would not be the case under the provisions of the New York statute.

The determination that this action must rest on the quoted section of the Merchant Marine Act of 1920 does not, however, dispose of the question as to the jurisdiction of the State courts. This section grants jurisdiction of actions under the Merchant Marine Act of 1920 to the court of the district in which the defendant employer resides or in which his principal office is located. " The court of the district " thus named in a Federal statute must be the District Court of the United States for such district.   The use of the singular in the designation of the tribunal and of the characteristic word " district " makes such construction necessary. On the other hand, the language granting jurisdiction to a specified District Court of the United States does not impliedly exclude the long-recognized and established jurisdiction of the State courts in such matters.   (*Oneida Community, Ltd.,* v. *Oneida Game Trap Co., Inc.,* 168 App. Div. 769.)

The common-law courts of the States are still competent to grant the common-law remedy.   (*Steamboat Co.* v. *Chase, supra.*)

The section in respect to jurisdiction may well be construed to mean that jurisdiction in such actions shall be under the District Court of the United States of the district in which the defendant employer resides or in which his principal office is located, where the jurisdiction of the United States courts is invoked, and that the jurisdiction of the State courts otherwise remains as heretofore to apply the common-law remedy.   Needless to say, the reasoning contained in *Prieto* v. *United States S. B. E. F. Corp.* (117 Misc. Rep. 703); *Nox* v. *United States S. B. E. F. Corp.* (193 N. Y. Supp. 340) and in *Wenzler* v. *Robin Line S. S. Co.* (277 Fed. Rep. 812), relied upon by the appellant, has not been overlooked, but we dis-

agree with each of these authorities so far as its holding is contrary to the above expression of opinion.

The defendant also urges that the judgment should be reversed because the plaintiff's intestate's death, as it claims, was the result of an obvious risk which he assumed. In an action brought under the Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143), the doctrine of the assumption of obvious risks obtains, not because that principle is embodied in the Federal Employers' Liability Act itself, but because common-law principles are there applicable, and the doctrine of the assumption of obvious risks is not done away with by that act. (*Seaboard Air Line* v. *Horton,* 233 U. S. 492; *Jacobs* v. *Southern R. Co.,* 241 id. 299.)

Here, however, the action is under the maritime law and not under the common law, and the rule in respect to the assumption of obvious risks is not a part of the general maritime law. (*Lafourche Packet Co.* v. *Henderson,* 94 Fed. Rep. 871.) The seaman must obey orders or subject himself to punishment for willful disobedience. (*Eldridge* v. *Atlas Steamship Co.,* 134 N. Y. 187.) He cannot quit his job without becoming a deserter. (*Malukas* v. *Overseas Shipping Co., Inc.,* 197 App. Div. 224.) Even though the defective appliance is known to the seaman when he ships, he does not assume the risk of injury therefrom but may rely upon defects being corrected. (*Cricket Steamship Co.* v. *Parry,* 263 Fed. Rep. 523.)

In short, vessel owners who sail their ships with improper appliances do so at their own risk and not at the risk of their seamen. Section 33 of the Merchant Marine Act of 1920 has added to the rights of seamen the causes of action corresponding to those expressly granted to railroad employees under the Federal Employers' Liability Act, but the causes of action of seamen are still causes of action under the maritime as distinguished from the common law and must be governed by its established rules.

The defendant further contends that the damages awarded by the jury are excessive. Considering the ages of the deceased and of his mother, who was the sole beneficiary, the amount of the deceased's earnings, their respective residences and manner of life, and the other facts bearing upon the pecuniary loss, we are of the opinion that the verdict was excessive and contrary to the evidence, and that the evidence does not support a recovery in excess of $5,000.

The defendant has also appealed from an order denying its motion to correct the judgment by striking out interest from the date of the plaintiff's intestate's death to the date of the rendition of the

verdict. As this action rests entirely upon the Federal statute, the ruling under the Federal Employers' Liability Act is applicable, and interest is not allowable. (*Norton* v. *Erie R. R. Co., No. 2,* 163 App. Div. 468.)

The judgment and order denying motion for a new trial should be reversed and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the verdict to the sum of $5,000 as of the date of its rendition, and in case such stipulation is given, the judgment, as modified, and the order should be affirmed, without costs.

The order denying the defendant's motion to correct the verdict by deducting the interest upon the verdict from the date of the plaintiff's intestate's death to the date of the rendition of the verdict should be reversed, with ten dollars costs, and the motion granted, with ten dollars costs.

All concur.

Judgment and order denying motion for new trial reversed and new trial granted, with costs to appellant to abide event, unless the plaintiff shall, within ten days, stipulate to reduce the verdict to the sum of $5,000 as of the date of the rendition thereof, in which event the judgment is modified accordingly, and as so modified is, together with the order, affirmed, without costs of this appeal to either party. Held, that the verdict is against the weight of the evidence upon the question of damages and is excessive.