ANNE ROSE SCHWARTZ, as Administratrix, etc., of FRANK V. SCHWARTZ, Deceased, Respondent, *v.* THE STATE OF NEW YORK, Appellant.*

(Claim No. 24089.)

Third Department, July 2, 1937.

---

* Revg. 161 Misc. 751.

*John J. Bennett, Jr., Attorney-General [Joseph L. Delaney, Assistant Attorney-General,* of counsel], for the appellant.

*Mackrell & Ranney [Charles J. Ranney* of counsel; *John J. Mackrell* with him on the brief], for the respondent.

BLISS, J. On March 6, 1934, Frank V. Schwartz met his death while employed by the State of New York in the Division of Canals of the Department of Public Works as a watchman. His employment was located at the Barge Canal Terminal along the west side of the Hudson river near the foot of North Ferry street in the city of Albany. This terminal consisted of a concrete dock of about 1,510 feet frontage along the river, on which were located some cranes, a derrick, a warehouse and a track running behind the warehouse. This warehouse was at the southerly end of the terminal. The southerly approach to the terminal from the city was by way of North Ferry street, and it could also be entered from the north by way of Bridge street. There was a paved roadway leading along the terminal running north and south several feet back from the water's edge. The terminal at its northerly end projected easterly several feet from the river bank out into deep water, and the roadway at that point bore gradually and slightly to the west and continued off of the terminal in a northerly direction along the bank of the river and thence to Bridge street. The day before Schwartz died the water in the river rose so that it covered the dock to a depth of about two feet, and, as it receded, it left ice, mud and pieces of logs all over the dock. The next day Schwartz was engaged in cleaning up around the terminal and pushing the ice and logs back into the river. He finished his work about six P. M. and went into the building, changed his clothes, washed up a bit and sat down for a while. It was snowing outside, and at six-fifty P. M. he called a taxicab, which arrived shortly afterward, and Schwartz got in and started home. Although the cab entered the terminal by way of the southerly or North Ferry street route, Schwartz directed the driver to proceed northerly along the dock so as to leave by way of Bridge street. As the cab approached the northerly end of the terminal the driver did not bear to the left or west but drove the cab off of the north end of the dock into the river. ˙ Although the driver forced his way out of the cab and swam to the shore, the passenger Schwartz was drowned. This claim was then made against the

State, and the Court of Claims has found that the State was guilty of negligence resulting in Schwartz's death, and which consisted principally of failure to properly light and guard the northerly end of the terminal and to place reflectors or other warning signs there. A substantial award has been made against the State for the damages resulting from Schwartz's death.

The Court of Claims considered the question as to whether the accident came under the Workmen's Compensation Law, and determined, by a divided court, that the death of claimant's intestate did not arise out of and in the course of his employment, and, therefore, the exclusive remedy afforded by that law did not apply.

All employees of the State are brought within the provisions of the Workmen's Compensation Law by group 16 of subdivision 1 of section 3 of that law. However, the injury which results in disability or death means only " accidental injuries arising out of and in the course of employment." (Workmen's Comp. Law, § 2, subd. 7.) It was urged by the respondent both in the court below and before us that the accident which caused the death of Frank V. Schwartz did not arise out of and in the course of his employment, and, therefore, that the provisions of the Workmen's Compensation Law have no application in the instant case. She claimed that his employment had ceased prior to his death, and that there was an intervening space of time between the cessation of such employment and the accident. It is urged that this lapse of time constituted a distinct hiatus and a definite break between the completion of his work and his departure for home, and that during this interval he was on his own time and no longer within his employment.

It has long been the rule with respect to inside or plant employees having a fixed place of employment on the premises of the employer that their employment does not cease until they leave such place of employment, when such leaving is with reasonable expedition over a route provided by the employer and the customary and practical way of egress. " But going to and coming from work becomes an incident of the employment when the employee is within the precincts of the employer." (*Matter of Lynch* v. *City of New York*, 242 N. Y. 115.) " It is a general rule that if an employee is injured on the premises of the employer in going, with reasonable dispatch and method, to or from actual performance of the specific duties of the employment by a way provided by the employer or reasonably used by the employee, compensation must be awarded. The going to and from the actual work and the risk involved in it are reasonably incidental to the employ-

ment." (*Matter of Kowalek* v. *N. Y. Cons. R. R. Co.*, 229 N. Y. 489.) Schwartz was leaving the State's premises by one of the customary exits. While his actual labors had ceased, he was still on the premises and had spent his time in changing his clothes, washing up and calling a taxicab to take him home because of the inclemency of the weather. No new or different occupation intervened between the time when he actually stopped working and when he met his death. All that he did was incidental to his employment with the State. As long as he was on the dock the hazard of injury or death from falling into the nearby water was present and one to which his employment exposed him. He had not left the employer's premises when he met with the fatal accident, and there was no break in the continuity of his employment and his exposure to its peculiar risks. We find nothing to distinguish this case from the many precedents which hold that an accident to an employee while still on the employer's premises within a reasonable time after quitting work, is compensable under the Workmen's Compensation Law. The remedy there provided is exclusive. (Workmen's Comp. Law, §§ 10 and 11.)

In this view of the case it is not necessary to pass upon the question of negligence of the State or decedent's alleged contributory negligence.

The judgment below should be reversed and the claim dismissed without prejudice as to any rights which the respondent may have individually or as administratrix under the Workmen's Compensation Law.

RHODES and McNAMEE, JJ., concur; HILL, P. J., dissents, with an opinion, in which HEFFERNAN, J., concurs.

HILL, P. J. (dissenting). Under the Workmen's Compensation Law employment continues and the law applies while the employee is going, with reasonable dispatch, from the place of his employment (*Matter of Lynch* v. *City of New York*, 242 N. Y. 115), but it applies only " until a suitable opportunity has been given to leave the place of work." (*Matter of Field* v. *Charmette K. F. Co.*, 245 N. Y. 139.) It is a question of fact whether the relation of employer and employee exists. (*Matter of Dubinsky* v. *Kofsky*, 266 N. Y. 631.)

Plaintiff's intestate came into the building and remained fifty minutes after he was through work before he telephoned for the taxicab to take him home. During this time he changed his clothing, " washed up a little bit," and sat down for a time. When the taxicab arrived he directed the driver to go the northerly route

to the public street. It was a question of fact whether the employment continued during so long a lapse of time after he was through working; also whether he had not terminated his employment and joined the ranks of the general public when he entered the taxicab, for which he personally paid, and directed the driver to proceed along the way which the State permitted the public to use as a highway. The Court of Claims has resolved this question in favor of the plaintiff. I believe that the facts and inferences arising therefrom amply sustain the finding.

The State was negligent in failing either to light the northerly end of the pier or to erect barriers.

I favor an affirmance.

HEFFERNAN, J., concurs.

Judgment reversed on the law and facts and claim dismissed, without costs.

The court disapproves all of the conclusions of law contained in the findings of fact and conclusions of law of the Court of Claims dated January 29, 1937. The court disapproves all of the conclusions of law contained in the claimant's requests to find. The court disapproves the refusal of the Court of Claims to find conclusions of law numbered I, IV, V and VIII contained in the State's requests to find and hereby finds said conclusions of law numbered I, IV, V and VIII as requested by the State. The court reverses all findings of fact contained in the conclusions of law found by the Court of Claims either upon its own motion or by request of either of the parties. The court finds and concludes that at the time of his accident and death claimant's intestate was in his employment with the State and that his said employment for that day had not as yet been terminated and that the accidental injury and death of claimant's intestate arose out of and in the course of his employment with the State of New York.