MICHAEL F. OTIS, as Administrator, etc., of VINCENT D. OTIS, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claim No. 25702.)

Court of Claims, April 22, 1941.

*Thomas M. McGough,* for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Assistant Attorney-General,* of counsel], for the defendant.

GREENBERG, J. The State moves to dismiss the claim on the ground that it fails to allege facts sufficient to constitute a cause of action against the State of New York. The motion is made upon the claim as filed herein and a stipulation of facts entered upon the record.

In accordance with the claim and the stipulation entered into, the facts alleged are, in substance, as follows: that on or about the 21st day of June, 1938, the deceased, Vincent D. Otis, was in the employ of the State of New York and was working in the hold of the steamship *Harry L. Findlay*, owned and operated by the Kinsman Transit Company of Cleveland, Ohio, and which was then docked and lying in the navigable waters of Lake Ontario at the Port of Oswego in the State of New York; that the said steamship was then discharging a cargo of grain into the State elevator at said port; that said Vincent D. Otis was one of a number of employees at said State elevator, whose exclusive duties were to enter in and upon the various grain boats which docked at the New York State Terminal in Oswego Harbor, for the purpose of discharging their cargoes of grain into the State elevator; that the ship's crew did not unload or assist in unloading its cargo; that at or about eight-thirty P. M., while the decedent was in the hold of said steamship and was engaged in the preparation of certain power shovels for the purpose of shoveling or scooping grain to and toward a certain marine log or conveyor consisting of buckets attached to an endless belt which had been lowered into the grain from the movable towers of said State elevator, he met his death by suffocation in said grain, due to the alleged negligence of the State of New York, its officers, agents and employees.

The claimant, Michael F. Otis, has filed said claim against the State of New York pursuant to the provisions of the Court of Claims Act and pursuant to the provisions of the so-called " Jones Act," being section 33 of the Merchant Marine Act of 1920 (41 U. S. Stat. at Large, 1007, chap. 250; U. S. Code, tit. 46, § 688).

It is the State's contention that pursuant to the last sentence contained in section 12-a of the former Court of Claims Act (section 8 of the present act) which provides that " nothing herein contained shall be construed so as to affect, alter or repeal any provision of the Workmen's Compensation Law," the only remedy available herein is under the Workmen's Compensation Law, and that the Court of Claims does not have jurisdiction of this claim. Group 16 of subdivision 1 of section 3 of the Workmen's Compensation Law provides that any employment by the State is within the provisions of the said statute. The claimant, however, contends that while, generally, the Workmen's Compensation Law is the exclusive remedy available to an employee of the State, pursuant to the first sentence contained in section 12-a (*supra*), the liability of the State must be determined in accordance with the same rules of law as apply to an action in the Supreme Court against an individual or corporation; that if an individual or cor-

poration were involved herein instead of the State, the claim herein would be governed by the admiralty and maritime jurisdiction and that the Workmen's Compensation Law would be inapplicable because the accident, resulting in decedent's death, occurred while the decedent was engaged in an employment connected with interstate commerce.

Generally the Workmen's Compensation Law is the exclusive remedy (*Schwartz* v. *State of New York*, 251 App. Div. 634; affd., 277 N. Y. 567), but the claim herein is the exception to the general rule because it comes within the admiralty jurisdiction of the United States.

Subdivision 1 of section 2 of article 3 of the United States Constitution extends the judicial power of the United States " To all cases of admiralty and maritime jurisdiction." This reference in the Constitution is to " the general system of maritime law which was familiar to the lawyers and statesmen of the country when the Constitution was adopted " and it was not the intention of this provision " to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign States." (*The Lottawanna*, 88 U. S. [21 Wall.] 558, at p. 574; 22 L. Ed. 654.) Subdivision 18 of section 8 of article 1 of the United States Constitution confers on Congress the authority to make all laws necessary to carry into execution the powers vested in the government or any department thereof by the Constitution. Pursuant to that authorization, the United States Judicial Code gives to the District Courts of the United States exclusive original jurisdiction " Of all civil causes of admiralty and maritime jurisdiction," except that it saved " to suitors in all cases the right of a common-law remedy where the common-law is competent to give it." (Judicial Code, § 24, subd. (3); § 256, subd. third; U. S. Code, tit. 28, §§ 41, 371.)

The first case in which this subject was treated and a formal decision rendered by the United States Supreme Court was that of *Southern Pacific Company* v. *Jensen* (244 U. S. 205; 37 S. Ct. 524; 61 L. Ed. 1086). The widow of Jensen presented a claim for compensation under the New York Workmen's Compensation Law. Jensen was operating an electric truck for the Southern Pacific Company and while driving the truck out of a vessel, docked in New York harbor, upon a gangway leading from the vessel to a pier, Jensen struck his head against a hatchway, thereby causing his death. The Court of Appeals held that claimant was properly

entitled to compensation. The United States Supreme Court reversed this case, holding that Jensen was engaged in the work of a stevedore; that his injuries being received upon a vessel were maritime in nature; that the Workmen's Compensation Law was invalid in so far as Jensen's employment was concerned as it destroyed the uniformity of the maritime law; that, being read into the contract of employment, the act, in effect, if held to be valid, would subject such contracts to the variant compensation laws of the several States; that Admiralty Courts had no means of enforcing the provisions of the act, and that it would not furnish a remedy saved to suitors under the Judicial Code because it was not a common-law remedy but a remedy unknown to the common law.

Subsequent to the *Jensen* case Congress attempted to meet the objections therein stated by adding to the clause in the Judicial Code (*supra*) saving common-law remedies, the following words, " And to claimants the rights and remedies under the Workmen's Compensation Law of any State." The validity of this amendment was first tested in another New York case (*Stewart* v. *Knickerbocker Ice Co.*, 226 N. Y. 302), where the Court of Appeals held the amendment constitutional. The widow of a bargeman drowned in the Hudson river was held to be properly compensable under the Workmen's Compensation Law. The United States Supreme Court reversed this decision (253 U. S. 149; 40 S. Ct. 438; 64 L. Ed. 834), holding that the amendment to the Judiciary Act was invalid as it attempted to destroy the uniformity of the maritime law by subjecting it to the variant compensation acts of the several States, and also was in effect a surrender of the legislative powers of Congress to the several States; that the compensation act was invalid in so far as it provided compensation in that case (Stewart being engaged in a maritime contract of employment and his injuries being of a maritime nature).

In 1922 Congress again attempted to amend the aforesaid clause of the Judiciary Act and to secure to persons engaged in maritime employment the benefits of the Workmen's Compensation Acts of the States by adding to the aforesaid saving clause the words " and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel, their rights and remedies under the Workmen's Compensation Law of any State * * *." Again the United States Supreme Court held the amendment to be invalid. (*Washington* v. *Dawson & Co.*, 264 U. S. 219.) In this case there was an attempt to compel an employee of stevedores, working on board ships in Puget Sound, to contribute to the accident fund maintained under the

Workmen's Compensation Act of the State of Washington. The Supreme Court held that a stevedore working on a vessel was engaged in a maritime employment under a maritime contract and that in such case the rule of uniformity was violated by the amendment.

Up to this point the efforts of Congress to impose the State Workmen's Compensation Acts on maritime employments in general have been a futile process.

The aforesaid difficulties were finally circumvented by the Longshoremen's and Harbor Workers' Compensation Act. (March 4, 1927, chap. 509, § 3; 44 Stat. at Large, 1426; U. S. Code, tit. 33, § 903.) This act grants a Federal compensation to longshoremen, carpenters and others who board vessels in the course of their employment and are accidentally injured while upon or in navigable waters. This act, by its very terms, however, does not apply to State employees.

It, therefore, follows that the fundamental principle by which the validity of all maritime legislation is to be determined is the rule of uniformity. Any legislation by Congress or by the States which abrogates that uniformity is unconstitutional. (*Panama R. R. Co.* v. *Johnson*, 264 U. S. 375.)

The applicability of the foregoing principles has been adopted by the courts of the State of New York in numerous cases, among which are the following leading cases: *Danielsen* v. *Morse Dry Dock & Repair Co.* (235 N. Y. 439); *Warren* v. *Morse Dry Dock & Repair Co.* (Id. 445); *Butler* v. *Robins Dry Dock & Repair Co.* (240 id. 23); *McKinnon* v. *Kinsman Transit Co.* (240 App. Div. 359); *Dworkowitz* v. *Harlem River Towboat Line, Inc.* (192 id. 855); *Christensen* v. *Morse Dry Dock & Repair Co.* (216 id. 274); *Zampiere* v. *Williams Spencer & Sons Corp.* (194 id. 576); *Campanile* v. *Morse Dry Dock & Repair Co.* (205 id. 480).

One of the earliest cases to follow the rule of the *Jensen* case (*supra*) was that of *Kennedy* v. *Cunard Steamship Co., Ltd.* (197 App. Div. 459). Plaintiff, a longshoreman, was working for defendant loading cargo on a steamship and was injured. Plaintiff was receiving compensation but when the United States Supreme Court handed down the decision in the *Jensen* case compensation was stopped and a common-law action was brought. At the close of the case the complaint was dismissed on the ground of contributory negligence. The Appellate Division reversed on the ground that it was a question for the jury. In anticipating admiralty questions that might arise on a new trial the court gives an interesting discussion of the history of the admiralty question. The Court of Appeals (235 N. Y. 604) affirmed the Appellate

Division on a stipulation for judgment absolute, holding that as a matter of law plaintiff was not guilty of contributory negligence.

It was thus assumed by both appellate courts that the plaintiff had properly brought a common-law action.

In *Kursa* v. *Overseas Shipping Co., Inc.* (217 App. Div. 775), in reversing the dismissal of the complaint, the Appellate Division held that as to maritime torts the general right of action for injuries resulting in death remains what it was before the passage of the Workmen's Compensation Law and that whether the Workmen's Compensation Law is elective or compulsory, neither can displace the admiralty jurisdiction of the Federal courts or the common-law jurisdiction of the Supreme Court of the State, citing the *Warren* and *Christensen* cases (*supra*).

One of the most recent cases on this question is that of *Sells* v. *Marine Garage, Inc.* (246 App. Div. 882), where it was held that the deceased was engaged in maritime employment at the time of the accident and that, therefore, the compensation court was not the proper forum, and the award was reversed and the claim dismissed.

This claim is properly prosecuted herein under the provisions of the so-called Jones Act (41 U. S. Stat. at Large, 1007, chap. 250; U. S. Code, tit. 46, § 688.)

The so-called " Jones Act," above cited, reads as follows: " Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located."

One of the earliest cases in the State of New York on the question of the applicability of this act was the case of *Tammis* v. *Panama Railroad Co.* (202 App. Div. 226 [1922]). The plaintiff, a resident of Richmond county, was a mariner, a ship's carpenter, on the defendant's steamship *Christobal*. The defendant was a domestic corporation located in Manhattan. The plaintiff was injured by an allegedly defective engine which supplied steam for a windlass. Plaintiff brought an action under the Jones Act in the Supreme

Court of Richmond County. The trial court dismissed the action on the ground that jurisdiction thereof was exclusively in the Federal courts, in reliance upon the last sentence of said section above cited. The court held, on appeal, that Congress did not intend to deprive seamen of the right to resort to the State courts in an action *in personam* to recover damages for personal injuries, and in respect to seamen the privilege saved to suitors by section 9 of the Judiciary Act of 1789 and continued by the United States Revised Statutes and the Judicial Code still exists.

*Lynott* v. *Great Lakes Transit Corporation* (202 App. Div. 613) in the same year (1922) held that an action for the death of a seaman killed by falling off an improperly constructed gangway on his way back to the boat was properly brought in the Supreme Court of the County of Erie, the court saying that the State courts have jurisdiction of maritime cases brought under the Jones Act. It is true, however, that no unequivocal declaration on this subject has been made. In the *Lynott* case (on p. 619) the most the court did say was the following: " The section in respect to jurisdiction may well be construed to mean that jurisdiction in such actions shall be under the District Court of the United States of the district in which the defendant employer resides or in which his principal office is located, where the jurisdiction of the United States courts is invoked, and that the jurisdiction of the State courts otherwise remains as heretofore to apply a common-law remedy."

The Court of Appeals of this State in *Patrone* v. *Howlett* (237 N. Y. 394 [1924]) expressed its views regarding this question of jurisdiction. There the court noted that this question of jurisdiction of the State courts is as yet unsettled by a decision of the United States Supreme Court. Although in *Patrone* v. *Howlett* the question of State jurisdiction was not expressly raised on the appeal, the court, in discussing the propriety of the trial court's charge regarding comparative negligence, did take up this question of jurisdiction. The court noted a split of authority on the jurisdictional question, citing *Nox* v. *U. S. S. Board* (193 N. Y. Supp. 340); *Prieto* v. *U. S. S. Board* (117 Misc. 703) and *Wenzler* v. *Robin Line S. S. Co.* (277 Fed. 812), all holding that the Federal District Court has exclusive jurisdiction and citing the *Tammis* and *Lynott* cases (*supra*) holding the State court had jurisdiction. Since the Court of Appeals had affirmed the *Lynott* case (234 N. Y. 626), and since the question of jurisdiction had not been raised by the appellant, the court refused to dismiss the complaint on its own motion for lack of jurisdiction. The Court of Appeals was of the opinion that the Jones Act " does not expressly or by necessary implication take away the right to resort to the State courts. It

provides for the venue, when the action is brought in United States court, and probably that is as far as it goes in defining jurisdiction. We have in effect so held in the *Lynott* case (*supra*)."

The latest declaration by the courts of this State on this subject is in *Elliott* v. *Steinfeldt* (254 App. Div. 739 [1938]). Although the act involved was the Federal Death on the High Seas Act (U. S. Code, tit. 46, §§ 761–768), the same principle was at issue, viz., whether plaintiff had the right to maintain the action in the State courts pursuant to the Judiciary Act of 1789 and sections 24 and 256 of the Judicial Code. (U. S. Code, tit. 28, §§ 41, 371.) In citing *Patrone* v. *Howlett* and *Tammis* v. *Panama Railroad Co.* (*supra*), the court said, " where the State courts have long enjoyed jurisdiction over the subject-matter of an action, jurisdiction is not withdrawn by Federal statute unless such an intention is distinctly manifested."

It, therefore, follows that the only remedy available to the claimant is that provided under the " Jones Act." Were the decedent, Vincent D. Otis, an employee of a private employer rather than the State of New York, resort cou d be had to the Federal compensation set up pursuant to the Longshoremen's and Harbor Workers Act. (March 4, 1927, chap. 509, § 3; 44 Stat. at Large, 1426; U. S. Code, tit. 33, § 903.) This act provides that longshoremen, carpenters and others who board vessels in the course of their employment and are accidentally injured while upon or in navigable waters are entitled to Federal compensation. The same workers when injured upon docks or other land borders of navigable streams in the course of their maritime work must look to State law for workmen's compensation. This act, however, by its terms does not apply to employees of the United States or of any State or foreign government.

The Court of Claims is the proper forum for the action brought herein. The so-called " saving clause " hereinabove referred to originated with section 9 of the Judiciary Act of 1789 whereby the District Courts of the United States were given " exclusive original cognizance of all civil causes of admiralty and maritime juris-diction, * * * saving to suitors in all cases, the right of a common law remedy where the common law is competent to give." This grant was continued by sections 563 and 711 of the United States Revised Statutes and by sections 24 and 256 of the Judicial Code. (See U. S. Code, tit. 28, §§ 41, 371.) There have been numerous decisions construing this section. (See cases herein-above cited and also the following: *Waring* v. *Clarke*, 5 How. 441; *The Moses Taylor*, 4 Wall. 411; *The Hine* v. *Trevor*, Id. 555; *The Belfast*, 7 id. 624; *Leon* v. *Galocran*, 11 id. 185; *Steamboat Com-*

*pany* v. *Chase*, 16 id. 522; *The Lottawana*, 21 id. 558, and *The Glide*, 167 U. S. 606.) These cases settled the law to be that actions *in rem* whether arising under the general maritime law or to enforce liens given by the United States or local State statutes, must be prosecuted in admiralty in the United States courts, while actions *in personam*, arising out of maritime contracts or torts, may be brought in admiralty or on the law side of the United States court or in a State court having an appropriate common-law remedy. It is the right sanctioned by the maritime law that may be enforced by any court having jurisdiction of the parties or the *res* by the common-law remedies appropriate thereto. This clause gives a right of election of a forum for the enforcement of the maritime right or to remedy the maritime wrong and thereby allows election of the procedure, whereby the matter may be determined. Were this action brought against a private employer, it is beyond question that an action pursuant to the Jones Act could properly be brought in the Supreme Court of the State of New York having jurisdiction. Concededly, the State of New York being the employer, claimant cannot resort to the Supreme Court, and for the same reason neither can he resort to admiralty nor the law side of the United States court. The Court of Claims, therefore, is the only forum available to the claimant wherein his common-law remedies are available to him. True, the Court of Claims is a creature of statute, but the consent of the State to be sued having once been given, relief is established pursuant to common-law principles. Hence, the Court of Claims furnishes to this suitor " the right of a common-law remedy where the common law is competent to give it," under the so-called " saving clause " of the Judiciary Act. Section 12-a of the Court of Claims Act reads in part as follows: " The State hereby waives its immunity from liability for the torts of its officers and employees and consents to have its liability for such torts determined in accordance with the same rules of law as apply to an action in the Supreme Court against an individual or a corporation, and the State hereby assumes liability for such acts, and jurisdiction is hereby conferred upon the Court of Claims to hear and determine all claims against the State to recover damages for injuries to property or for personal injury caused by the misfeasance or negligence of the officers or employees of the State while acting as such officer or employee."

The decedent was a seaman under the provisions of the Jones Act. While he was employed by the State as a member of a group whose exclusive duties were to board ships and assist in the removal of grain therefrom into the State elevator, fundamentally the work of all such men was to remove grain from the boats, whether they

assisted in setting up and arranging certain block and tackle and power shovels or whether they operated the mechanical shovels which carried the grain to the marine leg in the hold or whether they swept the remaining grain to the marine leg in the hold of the boat. All of this work was done on a boat afloat in navigable waters. Thus, in line with the decisions of the United States Supreme Court on this subject, the exact description of the work done by decedent is immaterial since the law of maritime torts is governed by locality. The question of applicability of the Workmen's Compensation Law of the State of New York was determined in the case of *Southern Pacific Co.* v. *Jensen* (*supra*), involving the death of a stevedore operating an electrical truck on the gangway of a vessel docked in New York harbor. The very basis of this decision was that his injuries, being received upon a vessel, were maritime in nature and that, therefore, the admiralty law controlled. While this action was brought before the so-called " Jones Act " existed, it is an early indication of the attitude of the United States Supreme Court toward the question of locality of the wrong as the controlling feature regardless of the general nature of the employee's work.

One of the earliest declarations on the subject of longshoremen being classified as " seamen " under the Jones Act was that of *International Stevedoring Co.* v. *Haverty* (272 U. S. 50 [1926]). In that case the plaintiff, a longshoreman, was injured while stowing freight in the hold of a vessel and he sued his employer, the stevedoring company. The Supreme Court held that the plaintiff was engaged in a maritime service formerly rendered by the ship's crew and came under the Jones Act, saying: " For most purposes, as the word is commonly used, stevedores are not 'seamen.' But words are flexible. * * * We cannot believe that Congress willingly would have allowed the protection to men engaged upon the maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship. * * * In view of the broad field in which Congress has disapproved and changed the rule introduced into the common law within less than a century, we are of opinion that a wider scope should be given to the words of the act and that in this statute ' seamen ' is to be taken to include stevedores employed * * * as the plaintiff was, whatever it might mean in laws of a different kind."

In *Atlantic Transport Co.* v. *Imbrovek* (234 U. S. 52) Justice HUGHES held, regarding a stevedore injured while loading a vessel, that he was a seaman, since upon the proper performance of his work depended the safe carrying of the cargo and the safety of the ship itself and that it was a service absolutely necessary to enable the ship to discharge its maritime duty. It was work formerly

done by the ship's crew but owing to exigencies of increasing commerce and demand for rapidity and special skill it has become a specialized service evolving upon a class as clearly identified with maritime affairs as are the mariners.

The consequent confusion in the law has since been commented upon by the New York Court of Appeals, as, for example, in the case of *Resigno* v. *Jarka Co., Inc.* (248 N. Y. 225) where the court said (at p. 234): " True, indeed, it is that the remedies available to a stevedore may thus vary from day to day, and even from hour to hour, with the location of his labor. Distinctions of that order are not unknown to the law. They have been made familiar by rulings under the Workmen's Compensation Acts by which a longshoreman is given a remedy if working on a boat and denied the same remedy if working on a dock *(State Industrial Commission* v. *Nordenholt Corp.,* 259 U. S. 263)." More recently, the United States Supreme Court, in the case of *Employers' Liability Assurance Corp., Ltd.,* v. *Cook* (281 U. S. 233, 236), said:

" The record plainly discloses that while in the course of his employment and at work in the hold assisting in unloading a vessel afloat on navigable waters Cook received injuries out of which this suit arose. There is nothing in principle to differentiate this case from *Northern Coal & Dock Co.* v. *Strand,* 278 U. S. 142, and the judgment of the Circuit Court of Appeals must be reversed. See *Nogueira* v. *New York, N. H. & H. R. R. Co.,* decided this day (281 U. S. 128).

" The proceeding to recover under the State Compensation Act necessarily admitted that the decedent was employed by the insured when injured. Any right of recovery against the insurance carrier depends upon the liability of the assured. Whether Cook's employment contemplated that he should work regularly in unloading vessels or only when specially directed so to do is not important. The unloading of a ship is not a matter of purely local concern as we have often pointed out. Under the circumstances disclosed the State lacked power to prescribe the rights and liabilities of the parties growing out of the accident."

Under the decisions of the United States Supreme Court and of the courts of this State *(supra),* a stevedore whose employment puts him on boats afloat in navigable waters belongs properly in the class of " seamen," at least so far as the purpose and intent of the Jones Act are concerned.

The very recent decision of the Appellate Division, Third Department, made on March 5, 1941, in the matter of the claim of *Hawkins* v. *Rayner* (261 App. Div. 1011) is distinguishable from the case at bar and is not applicable. In that case the deceased employee

received the injuries resulting in his death while at work on a motor-boat which was not, as the court found, in navigable water. The court stated: " This was an inlet where the change in tide was not more than eight inches to one foot and it did not contain over two feet of water. The boat on which the employee was at the time he lost his life was a private boat belonging to his employer. The work that he was doing was incidental to his duties and he was a land employee. In its decision the court adopted the finding that Seatuck Cove, where the boat was docked, was non-navigable and that the work the employee was doing was incidental to his duties and he was a land employee, and upon those facts based its decision that the deceased's employment was not maritime. In addition to the findings stated in the *per curiam* decision, the dissenting opinion of Presiding Justice HILL makes particular reference to the facts with respect to the navigability of the waters in which the boat was lying and upon findings made by him, decided that the deceased was engaged in a maritime employment and not within the jurisdiction of the New York State Compensation Law. In the instant case, however, there is no question as to whether the waters of Lake Ontario were navigable because in paragraph 9 of the claim it was alleged that the steamer *Harry L. Findley*, on which the deceased sustained the injuries resulting in his death, was lying in the navigable waters of Lake Ontario, and this being a motion to dismiss the claim, the facts thus alleged for the purpose of this motion must be conceded. Likewise, there is no question in the instant case as to whether the deceased was doing work incidental to his duties and was a land employee, as referred to in the *per curiam* decision in the *Hawkins* case, but, on the contrary, it was stipulated for the purpose of this motion that the deceased's exclusive duties were to enter in and upon various grain boats which docked at the New York State Terminal in Oswego larbor for the purpose of discharging their cargoes of grain into the State elevator, and that being conceded as a fact, the deceased was engaged in a maritime employment at the time of the accident herein.

The deceased, Vincent D. Otis, being a seaman within the meaning of the Jones Act at the time he sustained the injuries resulting in his death for which suit is now brought herein, and the accident alleged herein having occurred to the said decedent while engaged in his employment as a seaman on a boat in navigable waters, this action is not governed by the Workmen's Compensation Law of the State of New York and the only remedy for the claimant is under the Jones Act and the claim is properly before the Court of Claims.

The State also moved to dismiss the claim on the ground that the court did not have jurisdiction thereof for the reason that a copy of the notice of intention was not filed, in accordance with the statutory provisions, upon the Attorney-General. Paragraph 5 of the claim alleges that attached to the claim is a copy of the notice of intention to file this claim, which notice was filed in the office of the clerk of the Court of Claims and in the office of the Attorney-General on the 21st day of October, 1938, and paragraph 6 of said claim alleges that this claim was filed within two years after the claim accrued. For the purpose of this motion, the facts so alleged must be conceded. Accepting the truth of the factual statements in the claim as to filing of the notice of intention with the Attorney-General and the Court of Claims, the court has jurisdiction herein.

The motion is accordingly denied.